[No. 2,619.]

# JOHN W. LITTLEFIELD *v.* JOHN NICHOLS.

TITLE UNDER LATER SALE ON ELDER LIEN SUPERIOR TO TITLE UNDER EARLIER SALE ON JUNIOR LIEN.—A title derived under a lien elder in its origin is prima facie superior to a title from a common source, purporting to be derived under a lien junior in point of time, though the judicial sale under the latter may have preceded the sale under the former.

ELDER LIEN UNDER COMMON SOURCE OF TITLE MUST PREVAIL IN ACTION AT LAW.—In ejectment, where both parties claimed under liens upon a common source of title, and no equitable defense was pleaded; *held*, that

the title originating under the elder lien, provided it had not been allowed to become dormant, and the foreclosure proceedings were sufficient, must prevail.

APPEAL from the District Court of the Fifteenth Judicial District, County of Contra Costa.

This was an action of ejectment for three hundred and sixty acres of land, a portion of the San Pablo Rancho, in Contra Costa County. Both parties claimed under Joaquin G. Castro, in whose name the rancho was finally confirmed by the United States on February 24th, 1858, and final survey approved August 17th, 1864.

The plaintiff claimed as follows: On December 28th, 1854, Joaquin G. Castro executed a mortgage to Martina Perre of all his interest in the San Pablo Rancho, which was recorded on January 6th, 1855; on September 21st, 1855, suit of foreclosure was commenced upon the mortgage; on January 17th, 1856, there was a decree against defendant for nine thousand one hundred and fifty dollars, with interest at five per cent per month; on March 11th, 1856, there was a sale by the Sheriff to Martina Perre for five thousand dollars; on March 23d, 1857, Sheriff's deed to Martina Perre, recorded March 24th, 1857; and there were divers mesne conveyances carrying this title to plaintiff.

The defendant set up among other things, that John Currey recovered judgment against Joaquin G. Castro on October 23d, 1855, for three hundred dollars; docketed October 24th, 1855; execution on this judgment on October 26th, 1855; Sheriff's sale on November 29th, 1855, and Sheriff's deed on April 25th, 1863.

There having been a judgment for plaintiff, and motion for new trial denied, the defendant appealed.

*J. M. Seawell,* for Appellant.

*B. S. Brooks,* for Respondent.

By the Court, WALLACE, J.:

The title formerly held by Castro is the true title to the premises in controversy. The plaintiff claims to have acquired it, and the defendant claims that it is outstanding in a third person, who is not a party to the controversy. The title of the plaintiff relates to January, 1855, when the mortgage, through the foreclosure of which it comes, was recorded and became a lien. The outstanding title to October, 1855, when the Currey judgment against Castro, through which that title comes, also became a lien upon the premises.

The lien in which the plaintiff's title originated being thus the elder in its origin, a title derived thereunder is prima facie superior to a title from a common source, purporting to be derived under a judgment lien junior in point of time; and in an action of ejectment, where, as here, the controversy must turn upon the mere legal title, and no equitable defense is pleaded, the title originating in the elder lien must prevail over that originating in the junior lien, provided the lien of the former had not been suffered, in the meantime, to become dormant, or the proceedings through which it was foreclosed were not insufficient, in point of jurisdiction, for that purpose.

In *Rankin et al., plaintiffs in error,* v. *Scott, defendant in error,* 12 Wheat. 177, each party claimed to have acquired the title of John Little to the premises through judgments and Sheriff's sales, etc., resulting in a Sheriff's deed to each. These judgments respectively became liens upon the premises at different periods of time, and the sale under the *junior* judgment preceded that under the other. It was held that the sale under the elder judgment and lien gave the better title, notwithstanding such sale was itself subsequent in point of time to that made under the junior judgment. In delivering the opinion of the Court in that case

Mr. Chief Justice MARSHALL said: " By that law (of Missouri) judgments are to be a lien on all the lands of the debtor. The lien commences with the judgment, and continues for five years. The principle is believed to be universal that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant. The single circumstance of not proceeding on it until a subsequent lien has been obtained and carried into execution, has never been considered as such an act."

Upon these views it results that the plaintiff's title was superior to the outstanding title set up by the defendant; and the judgment is, therefore, affirmed.