OREGON RY. Co., Limited, *v.* OREGON RY. & NAV. Co.   (Four Cases. Nos. 1,120, 1,143, 1,178, 1,179.)

*(Circuit Court, D. Oregon.   September 13, 1886.)*

1. BURDEN OF PROOF.

   The complaint stated that a lease was executed by the officers of the defendant corporation in pursuance of a resolution duly passed by its board of directors. The answer admitted the execution of the lease under the corporate seal, but alleged that the meeting at which the resolution was passed authorizing such execution was held without a quorum. The reply denied knowledge or information concerning the want of a quorum sufficient to form a belief. *Held,* that the burden of proof is on the defendant.

2. RATIFICATION OF LEASE.

   A corporation, like a natural person, may ratify any act which it can perform; and the entry into the possession of a leased road in pursuance of a lease executed by its officers without due authority, and operating the same and paying the rent therefor, as reserved in said lease, is ample evidence of the ratification thereof.

3. ESTOPPEL—JUDGMENT BY DEFAULT.

   A judgment for want of an answer to a complaint is a conclusive determination between the parties to the action of every matter well pleaded therein, and necessary to such judgment.

4. DISTINCT DEMANDS.

   A claim for a semi-annual installment of rent, arising on a covenant in a lease of a railway for 96 years, is a separate and distinct demand from a claim for a semi-annual installment of money, due under another covenant in said lease, and appropriated thereby to the payment of the expense of maintaining the corporate organization of the lessor.

Actions to Recover Installments of Expense Money and Rents.
*Earl C. Bronaugh* and *John W. Whalley,* for plaintiff.
*Charles B. Bellinger,* for defendant.

DEADY, J.   These cases were before this court on April 16th, on (1) motions to strike out portions of the answers; (2) demurrers to so much of the answers as controverted or denied the corporate existence of the plaintiff, and its right to have and exercise the powers and privileges claimed by it, and the power of the defendant to take and have a lease of the plaintiff's road; and (3) demurrers to the second and third replies to the special defense in the answers of the illegality of the meeting of the directors, at which the resolution authorizing the execution of the lease was passed,—when the demurrers to the re-

plies were overruled, and the motion and demurrers to the answers were so far allowed (27 Fed. Rep. 277) as left the cases for trial on the issues of fact arising on the several replies to the special defense: (1) denying any knowledge or information thereof sufficient to form a belief; (2) a ratification of the lease by the defendant; and (3) two prior adjudications of the question of the validity and binding force and effect of the lease; and the issues made by the replies in Nos. 1,120 and 1,143 to the special defense of a recovery in a former action on the same cause of action, denying the same.

On May 17th the cases were heard by the court without a jury, and submitted for decision.

Briefly stated, the first special defense is as follows: The alleged lease was not executed by the authority of the defendant's board of directors, for that, at and before the date thereof,—August 1, 1881,—said board consisted of eleven persons, four of whom "assumed to hold a special meeting of said board," whereat the resolution authorizing the execution of said lease was passed; that thereafter the president of the defendant's board of directors signed its name to said lease, and the assistant secretary thereof affixed its corporate seal thereto; and that none of the members of said board had notice of such meeting, which was not a regular or stated one.

It is not alleged, in terms, in this defense, that this meeting was illegal or unauthorized, or that it was without the power to pass the resolution in question. But on the argument it was assumed that such was the case without question, under the corporation act of the state. This act provides (Laws Or. 526, 527, §§ 9, 11) that the powers of a corporation "are exercised" by the directors, and that "the powers vested in the directors may be exercised by a majority of them; and any less number may constitute a quorum at all regular or stated meetings authorized by the by-laws of the corporation, in all cases when either the directors or incorporators shall have filed with the secretary of state and county clerk a written statement designating such less number sufficient to form a quorum."

The facts alleged in this defense are controverted by the denial of the plaintiff. No evidence was offered on the matter by either party, each contending that the burden of proof is on the other. In my judgment, the burden of proof in this respect is on the defendant. It affirms a particular state of facts, which, if true, overcome the *prima facie* case made by the admission of the execution of the writing by its president and secretary, under its corporate seal. The issue is found for the plaintiff.

The evidence in support of the reply of ratification is full and convincing, and leaves no room for doubt. Among other things, it appears that on October 3, 1881, the manager of the defendant issued and circulated the following printed circular:

"The railroad and fixtures of the Oregonian Railway Company, Limited, having been turned over to the Oregon Railway & Navigation Company,

*under the lease,* J. M. Fillmore, superintendent, and officers and employes subordinate to him, will retain their present positions until further notice. and report to the undersigned.         C. H. PRESCOTT, Manager."

On October 1, 1882, the president of the defendant's board of directors made his third annual report to the stockholders of the corporation for the year ending June 30, 1882. This report was published in pamphlet form, together with an appendix, signed by the vice-president and secretary of the board, and generally circulated among the stockholders; and on October 1, 1883, a similar report and appendix for the year ending June 30, 1883, was made, published, and circulated in like manner. In both these reports the mileage operated by the defendant during the year by rail and water is given, and the road of the plaintiff is mentioned under the head of "leased lines." In the accounts given of the receipts and disbursements of the defendant in the appendices, the earnings and expenses of this road are stated, and the rent paid for the same, the amount being $112,760.40 in 1882, and $145,429.28 in 1883. Annexed to the report of 1883 is a map of the defendant's "system, its branches, and allied lines," on which the plaintiff's road is represented in *blue,* as a part of the "Oregon Railway & Navigation Company's lines."

On May 1, 1882, at a regular meeting of the defendant's board of directors, the purchase of the warehouses on the line of the plaintiff's road, from the Oregonian Warehouse Company, was authorized, and the leasing of the same to James Steele & Co. provided for.

A corporation, like a natural person, may ratify any act of its agent, or any one professing to act by its authority, which it has the power to perform. *Eureka Co.* v. *Bailey Co.,* 11 Wall. 491; *Gold Min. Co.* v. *National Bank,* 96 U. S. 644; *Witt* v. *Mayor,* 5 Rob. (N. Y.) 259; *Episcopal C. Soc.* v. *Episcopal Church,* 1 Pick. 375; *Pacific Rolling-mill Co.* v. *Dayton, S. & G. R. Ry. Co.,* 7 Sawy. 67; S. C. 5 Fed. Rep. 852.

Ratification takes place when one person adopts a contract made for him, or in his name. which is not binding on him because the one who made it was not duly authorized to do so. Ratification is a question of fact; and, in the great majority of instances, turns on the conduct of the principal in relation to the alleged contract or the subject of it, from which his purpose and intention thereabout may be reasonably inferred. Story, Ag. §§ 253–260. And. generally, deliberate and repeated acts of the principal, with a knowledge of the facts, that are consistent with an intention to adopt the contract, or inconsistent with a contrary intention, are sufficient evidence of ratification.

In this case any one of the several acts of the defendant is sufficient evidence of ratification. In the two years next succeeding the lease there were two annual meetings of the stockholders, at each of which a board of directors was elected, to whom the fact and results of operating this road, as a *leased* one were fully reported, without, so

far as appears, a question or objection from any one. Indeed, no one seems to have thought that there was anything that needed ratifying; and, on the whole case, it does not even now appear that there was. The entry into possession of the road, and the payment of rent in pursuance of the terms of the lease by the directors, who are the corporation, is of itself plenary evidence of ratification of the lease by the defendant. This issue must be found for the plaintiff.

The facts contained in the other two replies to this defense are stated fully in 27 Fed. Rep. *supra*, 281, 282.

The records of the prior actions have been introduced in evidence by the plaintiff; and I think they sustain the conclusion of the replies, that the defendant is, on account of judgments therein, estopped to allege this defense in this action.

The judgment set up in the first of these replies was given in this court in an action between these parties commenced on June 28, 1884, for an installment of rent alleged to be due under the lease of May 15, 1884. 22 Fed. Rep. 245. In the amended complaint therein it is alleged that the defendant was duly authorized by its "articles of incorporation, and by the resolution of its board of directors," to execute said lease. In the third amended answer the defendant denies "that it ever had or has the power or right or franchise to purchase or lease any railroad in the state of Oregon," and denies the demise of the road to it by the plaintiff; but admits that its president and assistant secretary signed the writing in question, and affixed thereto its corporate seal; and alleges that neither of said officers had authority to execute such writing on behalf of the defendant; and that the state of Oregon did not consent to such or any lease of said road. To this defense the plaintiff demurred, and on consideration thereof the court gave judgment for the plaintiff. If the plaintiff had gone to trial on this defense, evidence might have been given on the trial on the question of whether the officers of the defendant were authorized by a resolution of the directors to execute the lease; and if it appeared that the question was submitted to the jury, the finding and judgment would be conclusive on the point in any subsequent action between the parties. But the order or judgment sustaining the demurrer to this defense determines nothing but what is necessary thereto, (Code Civil Proc. Or. § 726,) namely, that under the statute, and its articles of incorporation, the defendant had power to take the lease. Add to this the admission in the defense that the lease was executed by the president and secretary of the corporation under its corporate seal, and, nothing appearing or being alleged to the contrary, presumably it was lawfully done by the authority of the directors. *Bank* v. *Dandridge*, 12 Wheat. 70; *McKeon* v. *Citizens' Ry. Co.*, 42 Mo. 79. And as a matter of fact that was the only question considered by the court. This defense, that the resolution was not passed at a legal meeting, had not then been mooted. But the final judgment in the case was given on the complaint for want of an answer as by default.

By this judgment every fact well pleaded in the complaint, and necessary to sustain it, was determined according to the statement thereof in the complaint. The rule is laid down in Bigelow on Estoppel, 27, as follows: "Judgment by default, like judgment on contest, is conclusive of all that it actually professes to decide, as determined from the pleadings."

In the case in question, it was alleged in the complaint that the officers of the defendant who executed this lease were duly authorized to do so by a resolution of its board of directors. This was a material allegation, and an element of the plaintiff's right to recover. And I think it is not open to further controversy between those parties, and that the defendant cannot now be heard to gainsay it. I do not question but that the defendant in this or any action subsequent to the first one on this lease may controvert this allegation by matter in confession and avoidance thereof. But, in my judgment, it is estopped to do so by a direct denial, or any averment inconsistent with the fact that such a resolution was formally passed by defendant's board of directors.

The judgment set up in the third reply was given in this court in an action commenced on June 25, 1885, for three several installments of expense money, which the defendant, in and by said lease, covenanted to pay the plaintiff, in addition to the rental, on May 15 and November 11, 1884, and May 15, 1885, for the purpose of enabling it "to keep up its corporate organization, and to pay its officers and office expenses." On July 21st, the defendant answered the complaint, alleging that on March 18th the plaintiff had commenced two actions, and on June 11, 1885, a third one, for the three semi-annual installments of rent falling due under said lease at corresponding periods with the installments of expense money sued for in the action, and that said actions were still pending. To this answer there was a demurrer, which, being overruled, judgment was given for the plaintiff, for the sum sued for, as by default. 23 Fed. Rep. 232. The only question determined on the demurrer is that the pendency of the prior actions for rent was not a bar to the one for the expense money; but the final judgment for want of an answer determined whatever was necessary to sustain the same, including, in my judgment, the allegation that the lease was executed by the defendant's president and secretary in pursuance of a resolution duly passed by its board of directors.

The case of *Cromwell* v. *County of Sac*, 94 U. S. 351, is cited by counsel for defendant in support of the proposition that a judgment by default is only an admission for the purposes of the case, and is not conclusive of any matter in another action on a different claim or demand between the same parties. The point decided in that case had no relation to a judgment by default. Briefly it was this: A party is not estopped, in an action on interest coupons attached to bonds issued by the defendant county, to prove, if necessary, that he

acquired the same for value before maturity, because in a former action against said county, on other coupons attached to bonds of the same series, he failed to make such proof, and therefore had judgment against him. The opinion of the court, by Mr. Justice FIELD, is learned and instructive, and considers the doctrine of estoppel by adjudication in various phases, and at some length. But the reason of this particular ruling must be that in the nature of things, and of the case, there was no ground for presuming or inferring that the plaintiff acquired the coupons sued on in each action at the same time and under the same circumstances. But a judgment in the first action that the bonds were absolutely valid or invalid would have been conclusive in any subsequent action between the same parties on any bond, or its coupons of the same series or transaction. *Beloit* v. *Morgan*, 7 Wall. 619. In my judgment, the issues arising on these two replies must be found for the plaintiff.

I admit the questions involved are not free from difficulty, and what I have heretofore characterized as the "conglomerate" style of the answer has not made them any less so. And if the binding force of the lease was not so clearly established by the evidence on the issue of ratification, and rested on the force and effect of these adjudications alone, I confess I would give judgment for the plaintiff with some hesitation. For it may be that an admission, or determination, on judgment by default, that the lease was executed in pursuance of a resolution passed at a meeting of the defendant's board of directors, ought not, and does not, conclude the defendant on the question of whether such meeting was a legal one generally, and, if so, whether it was qualified, under the circumstances, to pass this particular resolution; but thinking that everything requisite to the legality of the meeting, and its power to pass the resolution, is fairly implied and included in the admission or determination that the officers of the defendant were duly authorized to execute the lease by a resolution of its board of directors, I have concluded otherwise.

In the second special defense contained in the answers in the actions numbered 1,120 and 1,143 it is alleged that on July 29, 1885, in an action then pending in this court between the parties hereto "for the same cause of action as that set forth in the complaint herein," judgment was duly given against the defendant herein for the sum of $4,028.32, with costs and disbursements amounting to $27; which judgment was, in August following, fully satisfied by the defendant herein. In the reply thereto the plaintiff denies that in any action whatever between the parties hereto, for the same cause of action, any judgment was given against the defendant for $4,028.32, or any other sum; and denies that the plaintiff ever commenced any other action than this against the defendant for the cause of action set forth in the complaint herein. The evidence shows that the judgment mentioned in the defense is the one given in the action already referred to, which was commenced on June 25, 1885, to recover the

several installments of expense money falling due under the lease on May 15 and November 11, 1884, and May 15, 1885. The action numbered 1,120 was commenced on March 18, 1885, for an installment of rent falling due on November 11, 1884, and the one numbered 1,143 on June 11, 1885, for an installment of rent falling due on May 15, 1885.

From this statement it appears, in short, that on July 29, 1885, when the judgment was obtained in the action for the installments of expense money, these two actions for installments of rent were pending; and that they were also pending when the former action was commenced. If the action in which the judgment was given was for the same cause of action as that on which the pending actions are brought, such judgment is a bar thereto.

In *Hughes* v. *Dundee Mortgage Trust Investment Co.*, 26 Fed. Rep. 831, this court held that a claim by an attorney for services to a loan company, as its regular attorney during a period of years, constituted but one cause of action, and that a recovery in an action for part of the claim was a bar to an action for the remainder. In the course of the opinion of the court (26 Fed. Rep. 833) it was said:

"The defense is not an estoppel, but a bar, founded on a rule of public policy as just and expedient as the statute of limitations. This rule declares that no one ought to be twice vexed for the same cause,—*nemo debet bis vexari pro eadem causa.* It assumes that it is better that a plaintiff who wantonly or negligently splits a claim into parts for the purpose of suit should lose one of them, than that the adverse party should be needlessly harassed by litigating, in detail, matters that could and should have been determined in one action."

But it is not always easy to decide whether two or more items or claims constitute one or more demands or causes of action; and the decisions of the courts, as might be expected, are not harmonious on the subject. In some cases the courts have undertaken to prescribe a test of indivisibility; as that two or more items constitute but one demand, if the same evidence is applicable in whole or in part to both, or if they all arise out of one contract or transaction. *Taylor* v. *Castle*, 42 Cal. 372; *Secor* v. *Sturgis*, 16 N. Y. 558. But these tests have not been found satisfactory, and each case must be decided largely on its own circumstances. *Dulaney* v. *Payne*, 101 Ill. 332.

On this point counsel for the defendant cites *Reformed P. D. Church* v. *Brown*, 54 Barb. 191. This is an extreme case, and the ruling in it that where several claims, payable at different times, arise out of the same contract or transaction, all that are due must be included in the same action, and a recovery in an action on any one will bar a recovery in a subsequent action on the others, or any of them, has been practically reversed in the court of appeals, in *Perry* v. *Dickerson*, 85 N. Y. 345; in which it was held that, after a recovery in an action for a wrongful dismissal of the plaintiff from the defendant's employ, the plaintiff might still maintain an action to recover the wages earned by him, and due and payable before such wrongful dismissal.

In *Dulaney* v. *Payne*, 101 Ill. 325, it was held that a recovery in an action on a stipulation in a promissory note for the payment of interest on the principal sum therein one year after the note became due, was not a bar to a subsequent action for said sum. The interest and the principal were considered distinct demands, arising on distinct contracts, and constituting distinct causes of action, which the plaintiff might unite in one action or not at his pleasure.

In *Sparhawk* v. *Wills*, 6 Gray, 163, it was held on a bill to redeem certain premises mortgaged to secure the payment of a promissory note payable "in one year, with interest annually," that the principal debt was not merged in a judgment obtained for one year of such interest, after the note became due. And in *Andover Sav. Bank* v. *Adams*, 1 Allen 28, it was held that a judgment for installments of interest on a note, after the same became due, did not bar a subsequent action for the principal.

In *Merchants' Ins. Co.* v. *Algeo*, 31 Pa. St. 446, it was held that a recovery in an action on a breach of a covenant in a written instrument is no bar to recovery in another action on the same instrument for another breach; and although it is not stated in the report, in so many words, that the breach sued on in the subsequent action had occurred before judgment was obtained in the first one, it is plainly so implied from the circumstances.

In *McIntosh* v. *Lown*, 49 Barb. 550, it was held that where a lease contained several distinct covenants, and, during the term, there was a breach of two of them,—namely, to keep the buildings in repair, and to build 125 rods of fence,—that such breaches constituted distinct causes of action, and a recovery in an action on one of them, after the expiration of the lease, was no bar to a subsequent action on the other. In the course of the opinion it is said that these two covenants "are as entirely distinct as if they were contained in separate written contracts."

The lease in this case is a voluminous document, with many distinct stipulations and provisions. The first clause contains the grant of the road to the defendant for the term of 96 years, it "yielding and paying therefor during the said term the yearly rent of £28,000," to be paid in equal half-yearly installments, on May 15 and November 11 in each year, in advance. By clause 5 the defendants covenant to pay "the yearly rent hereinbefore reserved" in the manner specified; and by clause 22 the defendants covenant to pay the plaintiff "every year during the term, at the same time and place as the rental herein specified, the sum of £600 sterling money, for the purpose of enabling the lessors to keep up their corporate organization, and to pay their officers and office expenses."

In my judgment, on both principle and authority, the rent and expense money provided for in this lease are distinct demands arising on distinct contracts; and the mere fact that they are included in the same instrument, and are a part of the same transaction, and made

payable at the same time and place, does not make them otherwise. And, primarily, they are distinct demands, because it appears to have been the will and pleasure of the parties to the transaction that they should be so. It was easy enough to have added the £600 to the £28,000, and make it all rent, and payable as such; but the parties who arranged the lease, for reasons best known to themselves, saw proper to provide otherwise. The defendant is, or was at the date of the lease, equally interested with the plaintiff in keeping up the latter's corporate organization, and thereby maintaining the existence of its lessor. Otherwise the plaintiff's organization might lapse, and the road be taken possession of by the mortgagees or the state. And it is not difficult to imagine, in view of what might happen in this connection during a period of 96 years, that it was thought best to provide in the lease for the payment of a specific sum for this very purpose, so that the defendant might compel its application thereto for its own protection.

The parties to this transaction have, *ex industria,* distinguished these payments in name and purpose, and the law is not so arbitrary or unjust as to make them one indivisible demand, and compel the plaintiff to sue for them in one action. For the convenience of the plaintiff, the law will allow it to unite a claim for rent and expense money in one action, (Code Civil Proc. § 91;) but the parties, for their own purposes and convenience, made them distinct demands, and therefore the law will not compel it to so unite them. This issue must also be found for the plaintiff.

And the conclusion of law from the premises is that the plaintiff is entitled to recover of and from the defendant the sum demanded in each action, namely, in No. 1,120, $68,131, with legal interest from November 11, 1884; in No. 1,143, $68,131, with interest from May 15, 1885; in No. 1,178, $68,131, with interest from November 11, 1885; and in No. 1,179, $1,459.95, with interest from November 11, 1885,—together with costs and disbursements.

Evidence was also introduced on the trial by the plaintiff to prove the organization and corporate existence and power of the plaintiff. The evidence consists of the depositions of Thomas Thornton and David Ferguson, of Dundee, Scotland,—the former being a solicitor in that country of 33 years' standing, and the latter an accountant and secretary of the plaintiff since May 17, 1880; and John Reid, of Edinburgh, a Scottish advocate, and the registrar of joint-stock companies in Scotland, under the British statute, the "Companies' Act of 1862," and the amendments of 1867 and 1877, and the exhibits thereto annexed. The depositions were taken under a commission of this court dated October 8, 1884, in the action numbered 1,035, and then pending in this court between the same parties. Code Civil Proc. § 819. From this evidence it satisfactorily appears that the plaintiff was duly organized under said companies' act on April 30, 1880, with power to construct, own, operate, lease, or otherwise dis-

pose of, the road in question; and that a certificate to that effect was duly made and issued to it by the registrar of joint stock companies, under said act, on May 4, 1880. *Dundee Mortgage & Trust Investment Co.* v. *Cooper*, 26 Fed. Rep. 665. But I am not advised that there is any issue in the pleadings on this point since the allowance of the demurrers to the answers. However, if the plaintiff's counsel think they are entitled to a finding in this matter, they can have it.