JAMES M. HINES v. WILEY P. NORCOTT.

(Filed 2 October, 1918.)

1. **Contracts — Lessor and Lessee — Municipal Corporations — Ordinances—Statutes—Sewers—Health.**

  Where an ordinance of a town, in pursuance of its municipal powers, makes the use and maintenance of surface privies unlawful upon lots abutting upon a street wherein a sewer-pipe has been laid, and requires the owners of such lots to connect with the sewer by a certain date, providing a penalty for its violation, the courts will examine the ordinance to ascertain the intent of the municipal authorities in passing it; and the validity of a contract of lease of premises adjoining a street wherein the pipe had been laid is not affected by the fact that the owner thereof has failed to comply with the ordinance, there being nothing in the lease transaction immoral *per se*, or inhibition in the contract of lease against making the connections required.

2. **Same—Suitable Premises—Trials—Questions for Jury.**

  The owner of a lot in a town contracted to lease a part of a building to be erected by him thereon, providing among other things that the building should be "a suitable one," and after its completion the lessee entered upon

the leased premises and occupied the same without objection. Thereafter, an ordinance of the town required the owner of the building, under penalty, to connect with a street sewer, which he failed to do. The ordinance being interpreted as not affecting the contract, it is held that the lessee's right to annul the lease was properly made to depend upon the question of fact whether the building was a suitable one within the intent and meaning of the contract.

ACTION tried before *Allen, J.*, and a jury, at May Term, 1918, of PITT.

The plaintiff sued for rent due under a lease, made 13 November, 1913, by him to the defendant, for four stores and a hall in a building to be erected in the town of Greenville, at $12 per week, for a term of five years. At the completion of the building, in March, 1914, the defendant entered into possession and occupied the premises for about fourteen months, paying the rent regularly according to the terms of the lease, up to 12 April, 1915. The building was to be of brick and "a suitable one."

The defendant denied liability, and, by amendment to his answer, which was allowed by the court, he pleaded that the contract was unlawful and unenforcible, as being in violation of the following ordinance of the town of Greenville, passed in April, 1914, after the lease was executed and the defendant had taken possession of the tenement: "Whereas the maintenance and use of surface and dry privies in the town of Greenville is or may become a menace to the public health of the town: Now, therefore, be it ordained by the Board of Aldermen of the Town of Greenville in regular meeting assembled on 2 April, it shall be unlawful for any person, firm, or corporation to erect, maintain, or use any surface or dry privies upon any lot or premises in said town, abutting on any street wherein a sewer-pipe has been laid; and that all owners of said property shall connect with said sewer on or before 1 June, 1914. Any person violating the provisions of this ordinance shall be fined $5 for each offense, and each day said violation shall continue shall constitute a separate offense."

There was evidence to the effect that the plaintiff, at the time of making the lease, and afterwards, had promised to install a plumbing and sewerage system on the premises, connecting with the main sewer line on Cotanch Street, which is in front of the building, but that this was not done. Plaintiff denied that he made any such promise, or that anything was said about it. The upstairs was to be used for a dance hall; the lower story was to be used for a pool-room, a barber shop, a cafe, and a drug store, one in each of the four rooms.

Plaintiff testified that defendant paid the rent up to 12 April, 1915, and there is nothing charged after 31 May, 1915, and that defendant quit the premises in 1915.

The defendant requested that the following instructions be submitted to the jury:

1. As it is admitted that plaintiff did not put in sewerage as required by the ordinance of the town of Greenville, the plaintiff cannot recover on said contract since 1 June, the date said ordinance became effective.

2. As plaintiff admits the rental account has accrued since 12 April, 1915, and since that time he has been renting the building in violation of the ordinance, he cannot recover.

3. If you find from the evidence that plaintiff rented the building in violation of the ordinance, then he cannot recover in this action.

These instructions were all refused, and defendant duly excepted.

The court charged the jury as follows: "This action, as you will understand, is brought by the landlord, Mr. Hines, against the defendant for an amount which he claims to be due for his building which he rented. The only issue submitted to you is as to what amount, if any, is due the plaintiff by the defendant, the plaintiff claiming that he is due the sum of $113, and the defendant claiming that he is entitled to a counterclaim, or set-off, for failure to put in certain sewerage. The first question to be considered is whether that was agreed upon, and whether it was necessary to make it a suitable building. You will remember the agreement that he was to provide a suitable building, and there was a controversy there, the plaintiff contending that it was a suitable building without sewerage, and the defendant contending that it was not a suitable building without sewerage, and that by reason of the failure to so provide sewerage he has been damaged to the amount of $10 per month, which, he says, amounts to about $100. So the first question would be as to whether it was a suitable building without sewerage for the purpose for which it was being erected and used; and if you find it was suitable without it, then he would not be entitled to a counterclaim. If you find that it was not suitable, then you will further find whether he was damaged by reason of the failure, and deduct from the amount due to the plaintiff, which plaintiff says is $113, the amount of such damage as you find. I shall not hold that by reason of not complying with the town ordinance the plaintiff cannot recover, and I charge you not to consider that, it being a question between him and the town authorities as to whether they would make him close his business or comply with the ordinance. It would not affect this suit. So you consider what amount is due the plaintiff, if any, under the contract, and whether or not he erected a suitable building; and if he did, then he would be entitled to the full amount; and if he failed to do so, then you would deduct whatever amount you find he has been damaged by reason of the failure in making it a suitable building."

Defendant, in proper manner, excepted to the charge, and assigned several errors.

The jury returned the following verdict:

1. Is the defendant indebted to the plaintiff? If so, in what amount? Answer: $113.

Judgment upon the verdict, and defendant appealed.

*F. C. Harding for plaintiff.*
*Julius Brown for defendant.*

WALKER, J., after stating the case: The defendant contends that there can be no recovery against him in this case because the lease is an illegal contract, being violative of the ordinance of the town of Greenville, which we have copied in the statement of the case. For the purpose of deciding whether a contract is in contravention of a statute or ordinance, and void for that reason, we are at liberty to examine the statute and ascertain what was the legislative intent, and whether it was the purpose to avoid the contract alleged to be contrary to its provisions, or whether it was intended that the penalty alone should be a sufficient punishment. The Court, by *Justice Wayne,* held, in *Harris v. Runnels,* 12 Howard, 79 (13 L. Ed., 901), after stating the English rule: "Such we believe to be now the rule in England, but with many exceptions, made upon distinctions very difficult to be understood consistently with the rule—so much so, that we have concluded, before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only, for doing a thing which it forbids, that the statute must be examined as a whole to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so. In other words, whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken for granted that the Legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice. In this way the principle of the rule is admitted, without at all lessening its force, though its absolute and unconditional application to every case is denied. It is true that a statute containing a prohibition and a penalty makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the Legislature to avoid a contract made in contravention of it. When the statute is silent and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. It is not necessary, however, that the reverse of that should be expressed in terms to exempt a contract from the rule.

The exemption may be inferred from those rules of interpretation, to which, from the nature of legislation, all of it is liable when subjected to judicial scrutiny. That legislators do not think the rule one of universal obligation, or that, upon grounds of public policy, it should always be applied, is very certain. For, in some statutes, it is said in terms that such contracts are void; in others, that they are not so. In one statute there is no prohibition expressed, and only a penalty; in another there is prohibition and penalty, in some of which contracts in violation of them are void or not, according to the subject-matter and object of the statute; and there are other statutes in which there are penalties and prohibitions in which contracts made in contravention of them will not be void unless one of the parties to them practices a fraud upon the ignorance of the other. It must be obvious, from such diversities of legislation, that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be fully examined before courts should refuse to give aid to enforce contracts which are said to be in contravention of them."

In *Dunlop v. Mercer,* 156 Fed. Rep., at p. 556, the Court follows the rule laid down in *Harris v. Runnels, supra,* and thus comments upon it: "The rule announced in this case has been repeatedly applied by the Supreme Court, notably in *Fritts v. Palmer, supra,* and the cases cited in that opinion, and has become an established canon of interpretation in the national courts. The true rule is, that the court should carefully consider in each case the terms of the statute which prohibits an act under a penalty, its object, the evil it was enacted to remedy, and the effect of holding contracts in violation of it void, for the purpose of ascertaining whether or not the lawmaking power intended to make such contracts void; and if from these considerations it is manifest that the Legislature had no such intention, the contracts should be sustained and enforced; otherwise, they should be held void," citing cases, and among them *Fritts v. Palmer,* 132 U. S., 287 (33 L. Ed., 317). See also 6 Ruling Case Law, sec. 109, and cases in note 20 to the text; 13 Corpus Juris, pp. 422 and 423, sec. 352, and note 84 (a) to text; *Levison v. Boas,* 150 Cal., 185 [*S. c.,* 12 L. R. A. (N. S.), 575], and elaborate note; *Neimeyer v. Wright,* 75 Va., 239; *Union & Mining Co. v. R. M. Nat. Bank,* 96 U. S., 640 (24 L. Ed., 648); *O'Hare v. Bank,* 77 Pa., 96.

The case of *Harris v. Runnels, supra,* is analogous to our case, for there the suit was upon a promissory note given for slaves carried into Mississippi and sold there, in violation of a statute of that State which prohibited their sale without a certificate. The Court sustained a recovery upon the note against a plea that it was given in violation of the law. In the case under consideration the ordinance, which is entitled "Dry or Surface Privies," declares that they are a menace to the public

health of the town; forbids that they be erected, maintained, or used upon any lot, or premises, abutting on any street wherein a sewer-pipe has been laid, and requires that "The owners of said property shall connect with said sewer on or before 1 June, 1914." There is nothing there said, expressly or impliedly, to the effect that leases of such premises shall be void, but the ordinance only provides for a penalty of $5 for each day's violation of its provisions. The imposition of a penalty for not doing an act which is required to be done may of itself render the doing of the same illegal; but still, if upon a fair construction of the statute it appears to have been the intention of the legislative body to confine the punishment or forfeiture to the penalty prescribed for a violation of it, that intention will be enforced. And the same may be said as to the prohibition of an act, but it does not follow in either case that the illegal act will vitiate a contract which is connected with it only incidentally because it relates to property affected, in some degree, by the statute or ordinance prohibiting or enjoining the act and annexing a penalty for its violation. This ordinance was intended to forbid the "erection, maintenance, or use of surface or dry privies" in the town, and required, in order to prevent any injury to the public health, that they should be connected with sewer-pipes laid in a street adjoining the premises. The lease in this case did not refer at all to the subject-matter of the ordinance, and especially did not stipulate that no such connection should be made, or that such privies should or might be used on the premises. The town council, in passing the ordinance, surely did not have in mind the prohibition of a lease or sale of the premises, but only the punishment by way of penalty for the violation of its ordinance. The Court said, by *Justice Harlan,* in *Fritz v. Palmer, supra,* at p. 288: "It may also be assumed, for the purposes of this case, that this company violated the law of that State when it purchased the premises here in controversy without having, in the mode prescribed by the statutes of Colorado, previously designated its principal place of business in that State, and an agent upon whom process might be served. But it does not follow that the title to the property conveyed to the Comstock Mining Company remained in Groshon, notwithstanding his conveyance of it to that company in due form and for a valuable consideration." And in *Dunlop v. Mercer, supra, Judge Sanborn,* in referring to that case, said: "The Supreme Court held that the deeds were illegal, but that they were valid, and that they conveyed the property, and it sustained the title on the ground that the imposition of the penalty of the personal liability of the officers and stockholders, without any imposition of the penalty that contracts and deeds in violation of the statute should be void indicated that the Legislature did not intend to make and did not make such deeds and contracts void by statute." And again: "The object of it was not to

prohibit or to avoid contracts of foreign corporations for the sale of merchandise. The evil which the Legislature sought to remedy was not the making or the performance of such agreements. Such contracts were not deleterious to the citizens or to the State, but they were beneficial to both. The purpose of the Legislature was to subject foreign corporations doing business in the State to the process of its courts, and perhaps to a license tax. . . . The effect of the statute was to provide that if such a corporation would not subject itself to the process of the courts of the State, it should not be permitted to resort to such courts for relief, and it should pay a penalty of $1,000. There is no declaration in the statute that contracts of unqualified corporations doing business in the State without complying with the prescribed conditions shall be void."

It cannot be supposed, upon a proper reading of this evidence, that the council intended to invalidate leases and sales of property merely because the owner of the premises had failed to make the sewer connections, and it is to be noted that nothing in the case shows that there were any dry or surface closets on the premises, or anything else that would "menace the public health." The jury have found, when we interpret the verdict in the light of the evidence and the charge, that the building was suitable, within the meaning of the contract, for all the purposes of the defendant, under a charge which required the jury to find, before deciding for the plaintiff, that the building was suitable without sewerage, that being the controversy between the parties. If the council intended to invalidate leases or sales of the property until the proper sewer connections were made, if there were dry or surface closets on the premises, it was very easy to say so; but that was not the purpose, as the council manifestly intended that the ordinance should provide only for a penalty for erecting, maintaining, or using such closets without having made the connection after the date named therein. The lease was entirely collateral to and independent of the object for which the ordinance was enacted, as the cases already cited by us clearly demonstrate. It would be pressing the ordinance by forced construction beyond its proper and intended scope to hold that it was fairly within the contemplation of the council to destroy contracts made with reference to the premises described in the ordinance, especially when the leasing and conveying of property is of itself perfectly legal, and the freedom of such traffic exchanges is in large measure beneficial to the public interests, and contributes to the prosperity of the town. Such a holding is not required by public policy, and the consequences of it to legitimate interests repels the idea that it was intended by the council that the ordinance should embrace such sweeping forfeitures. *Union & G. M. Co. v. R. M. Nat. Bank, supra.*

There is nothing in this record to show that the evil recited in the

ordinance as affecting the public health existed in this instance, or that the premises could not be occupied safely without the sewer connections.

The case of *Courtney v. Parker,* 173 N. C., 479, does not conflict with our decision, and is not an authority in support of the defendant's contention. There the defendant had done the very thing which was, in express terms or by the clearest implication, forbidden by the statute, and which it was unlawful to do, and every time he made a sale in the same manner, he did the same thing which the statute was intended to prohibit, and which it declared should be unlawful and a misdemeanor, punishable by fine and imprisonment. In other words, the statute declared that he should conduct his business in a certain way, and not otherwise, and that he should not conduct it at all "unless" he complied with the provisions of the statute. He did not pursue the prescribed method, but the one denounced, and his act was therefore held to be illegal and his contract tainted by it. That is not our case.

There is nothing in the lease transaction which is immoral *per se,* and therefore it is our right to search out the intention of the council and the meaning of the ordinance, in the language of the latter, and discover, if we can, what was its purpose, and not destroy contracts, with perhaps disastrous results, unless we find that to have been the real meaning and object in view. *Courtney v. Parker, supra,* and cases cited therein. The ordinance does not, in terms or by implication, forbid the sale or leasing of premises having no sewer connections, but is restricted to the injunction that in certain instances the owner should make such connections under a penalty for his failure to do so. There is no inhibition in this contract against the making of such connections, and the owner is perfectly free to make them at any time. There is not even a reference to the matter, one way or another.

The learned judge decided correctly upon the validity of the contract. No error.