LAWRENCE E. STEPP, Plaintiff v. SUMMEY OUTDOOR ADVERTISING, INC.,
AND BOYD L. HYDER, Defendant

SUMMEY OUTDOOR ADVERTISING, INC., Plaintiff v. BOYD L. HYDER,
Defendant

No. 9129SC480

(Filed 7 July 1992)

**Landlord and Tenant § 6.1 (NCI3d) — lease of land for billboard —
zoning ordinance changes — nonconforming sign — amount of rent**

The trial court partially erred by granting summary judg-
ment for plaintiff in an action arising from the lease of land
by plaintiff to defendant for construction of a billboard. The
agreement called for the lease of a 2,400 square foot portion
of a lot for 10 years at an annual rent of $800 for the first
five years and $1,000 for the next five years, and specifically
provided that the lessee could terminate the lease if the erec-
tion or maintenance of signs on the premises was prohibited
or necessary building permits were not obtained by the lessor
(plaintiff) or were revoked. Defendant (lessee) obtained a per-
mit for a 672 square foot double-faced billboard, but plaintiff
shortly thereafter learned that the sign could not be built
on a lot of less than 10,000 square feet and that the presence
of a sign would prevent the erection of another building on
the lot. The lease was then amended to provide for the lease
of 10,000 square feet at $3,300, but also provided that the
lease would revert to 2,400 feet at $800 per year if the or-
dinance was amended to allow signs on 2,400 square foot areas.
The billboard was erected and defendant began making
payments. The zoning ordinance was subsequently amended
to reduce the maximum permissible sign size to 380 square
feet, so that the billboard was nonconforming, as it had been
under the previous size limit of 600 square feet. The ordinance
which prohibited the coexistence of a building and a sign on
a 10,000 square foot lot was amended and defendant unilateral-
ly took the position that this amendment triggered the rever-
sion clause in the lease and began paying rent on 2,400 square
feet at $800 per year. Plaintiff was informed by the City that
the sign was nonconforming and that it would prevent a building
being placed on the remainder of the lot. Plaintiff then brought
this action claiming rent due based on 10,000 square feet and

damages resulting from interference with his use of the property by the presence of the nonconforming sign. Summary judgment was improperly granted for plaintiff on the rent issue because the amendment to the ordinance triggered the reversion clause in the amended lease, but summary judgment was properly granted for plaintiff on his cause of action for interference with his use of the property arising from the presence of the nonconforming sign. The amount of damages is a jury question.

**Am Jur 2d, Landlord and Tenant § 998.**

APPEAL by defendant Summey Outdoor Advertising, Inc. from order entered 11 February 1991 by *Judge Loto G. Caviness* in HENDERSON County Superior Court. Heard in the Court of Appeals 6 January 1992.

This case concerns a dispute over the amount of rent due from the lease of land upon which a billboard was constructed and the damages, if any, due the lessor from the refusal of the lessee to either remove the billboard or bring it into conformance with the local zoning ordinance.

On 26 February 1983, defendant Summey Outdoor Advertising, Inc., (Summey) entered into a written agreement with Carla H. Lyda for the lease of a 40 foot x 60 foot portion (hereinafter the 2,400 square foot portion) of a lot located in Hendersonville, North Carolina. The lease was for 10 years beginning 1 May 1983 at an annual rent of $800.00 for the first five years, then $1,000.00 per year for the next five years. The lease explicitly provided for the erection of a billboard on the 2,400 square foot portion. It also provided, in pertinent part:

If at any time the erection . . . or maintenance of *its signs* on the demised premises is prohibited by any law, ordinance or authority, or building permits are either not obtained or revoked, or if such activity becomes unprofitable within the sole judgment of Lessee, Lessee may terminate this lease by giving Lessor thirty (30) days advance notice of such termination.

. . .

This lease subject to Lessor being able to obtain necessary building permits.

Neither Lessee nor Lessor is bound by any stipulation, representation or agreement not printed or written in this lease.

On 1 March 1983, Summey applied for a permit to erect a 672 square foot double-faced billboard on the leased property. The permit was granted. Shortly thereafter, plaintiff Stepp (Mrs. Lyda's son and agent) and Summey were informed that pursuant to the zoning ordinance, the sign could not be built on a lot less than 10,000 square feet and that the presence of a sign (a "structure" under the ordinance) would prevent the erection of any other building on the lot. In response to this information, the parties amended the lease. The 9 May amendment expressly incorporates the 26 February lease and reads in pertinent part:

(1) Lease 10,000 square feet at rate of 33 per square foot instead of 2,400 square feet ($3,300.00 instead of $800.00).

(2) The Lease reverts to 2,400 square feet (at $800.00 per year) if City of Hendersonville Zoning Ordinance is amended so as to allow billboard signs on 2,400 square feet areas (with a prorata adjustment of rents paid or due upon the revision of this Lease to 2,400 square feet).

Defendant Summey then constructed a 672 square foot double-sided billboard on the designated 2,400 square foot portion of the lot and began making payments consistent with the rental of the whole 10,000 square foot lot as per the amended lease.

On 5 April 1984, the City amended its zoning ordinance to reduce the maximum permissible size of outdoor signs to 380 square feet from 600 square feet. The billboard was nonconforming under this amended ordinance, as it had also been under the prior ordinance. On 7 November 1985, the ordinance prohibiting the co-existence of a building and a sign (a sign being a "structure") on a 10,000 square foot lot was amended by removing the words "or structure." Summey unilaterally took the position that this amendment triggered the reversion clause in paragraph 2 of the amended lease such that Summey was now liable for rent on only 2,400 square feet, and not 10,000 square feet. Therefore, beginning 7 November 1985 Summey paid rent on the basis of 2,400 square feet at $800.00 per year.

On 8 December 1985, Mrs. Lyda died and plaintiff Stepp became the sole owner of the lot and the lease-holder. In March 1986, Stepp wrote to Summey to demand payment on the basis of 10,000

STEPP v. SUMMEY OUTDOOR ADVERTISING, INC.

[106 N.C. App. 621 (1992)]

square feet and to request that all further payments or correspondence be directed to him as Mrs. Lyda's successor. In this letter, Stepp informed Summey that he now held the deed to the lot in question.

At some point, Stepp inquired of the City whether he could erect a building on that portion of the lot not associated with the sign (i.e. on the "remainder" of the lot). By letter dated 11 June 1986, Stepp was informed by the City inspection department that due to the 5 April 1984 change in the zoning ordinance regulating the maximum size of billboards, the sign on his lot had become nonconforming and that the presence of a nonconforming sign on the lot would prevent a building from being placed on the remainder. Beginning in December 1987, Stepp wrote to Summey to demand past due rental payments based on 10,000 square feet and the removal of the sign for breach of contract by either failing to pay the full amount due or under the "renegotiation" provision in the lease "if property is sold." Summey responded and denied breach of contract.

On 4 March 1988, Stepp conveyed the property to Hyder, retaining the right to receive the rent until 1 May 1988.

On 13 December 1988, Stepp sued Summey alleging (1) rent owed in the amount of $7,425.00 and (2) damages resulting from the interference with plaintiff's use of the property by the presence of the nonconforming sign.

Both plaintiff Stepp and defendant Summey moved for summary judgment. By order entered 11 February 1991, Judge Caviness granted summary judgment in favor of plaintiff on the rent issue and ordered defendant Summey to pay $7,425.00, which represented the difference between $800.00 per year paid and $3300.00 per year owed from 7 November 1985 through April 1988. The court granted partial summary judgment for plaintiff on his second cause of action, finding Summey liable for its refusal to remove or bring into conformance its nonconforming sign, and leaving for the jury the amount of damages. The court denied defendant's motion for summary judgment. Defendant Summey appeals.

*Atkins & Craven, by Lee Atkins and Susan S. Craven, for plaintiff-appellee.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Allan R. Tarleton, for defendant-appellant Summey Outdoor Advertising, Inc.*

STEPP v. SUMMEY OUTDOOR ADVERTISING, INC.

[106 N.C. App. 621 (1992)]

JOHNSON, Judge.

The rules bearing on summary judgment have been stated too often to bear repeating. Suffice it to say that summary judgment is proper when there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. *Kessing v. National Mortg. Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971); *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 101 N.C. App. 1, 398 S.E.2d 889 (1990).

Defendant contends that the trial court erred in granting summary judgment to plaintiff on his claims for past-due rent and for damages resulting from his inability to use the remainder of the lot due to the presence of the nonconforming sign. We agree. The summary judgments in favor of plaintiff on his first and second cause of action cannot stand at the very least because they are fatally inconsistent: defendant cannot on the one hand be liable for rent on the whole 10,000 square foot lot for the whole period at issue and on the other hand also be liable for damages due to plaintiff's inability to use the remainder of the lot during a portion of that same period.

The questions before us are: (1) whether under paragraph 2 of the amendment, defendant is only liable for rent on 2,400 square feet beginning on 7 November 1985, the effective date of the revised ordinance, and (2) if so, whether its refusal to remove the sign or to conform it to the requirements of the City ordinance regarding size makes it liable to plaintiff for damages resulting from that refusal. We conclude that the 7 November 1985 amendment to the ordinance triggered the clause in the amendment to the lease making defendant liable for rent on only 2,400 square feet for the remainder of the lease term. We further conclude that under the terms of the contract, defendant was required to maintain its sign in conformity with the local ordinances so that defendant is liable for damages to plaintiff which derive from its failure to do so.

Under the terms of the amended lease, the parties agreed that defendant would lease 10,000 square feet at $3300.00 per year until such time as the "City of Hendersonville Zoning Ordinance is amended so as to allow billboard signs on 2,400 square feet areas" at which time "the lease reverts to 2,400 square feet (at $800.00 per year)[.]" Plaintiff does not challenge defendant's contention that the 7 November 1985 amendment to the zoning ordinance changed the existing ordinance to allow a building and a sign to

co-exist on a 10,000 square foot lot. Plaintiff contends instead that because parties may not contract to commit an unlawful act, the lease must be construed as including the condition that the size of the leased premises would not decrease to 2,400 square feet unless the sign met any condition required by the zoning ordinance for a sign to exist on 2,400 square feet. The evidence suggests that even when it was first constructed, the sign was larger than allowed by the then existing ordinance. The evidence conclusively shows that after the 5 April 1984 amendment to the sign size ordinance, the sign was larger than allowed by the ordinance. Plaintiff's argument, however, is misplaced.

> The general rule is that an agreement which violates a constitutional statute or municipal ordinance is illegal and void. However, there is also ample authority that the statutory imposition of a penalty, without more, will not invariably avoid a contract which contravenes a statute or ordinance when the agreement or contract is not immoral or criminal in itself. In such cases the Courts may examine the language and purposes of the statute, as well as the effects of avoiding contracts in violation thereof, and restrict the penalty for violation solely to that expressed within the statute itself. (Citations omitted.)

*Financial Services v. Capitol Funds*, 288 N.C. 122, 128, 217 S.E.2d 551, 556 (1975) (violation by seller of ordinance making it a misdemeanor to describe land in deed by reference to subdivision plat which has not been approved and recorded does not render a conveyance of land illegal on ground that seller did not obtain approval of subdivision plat as required by ordinance). In *Hines v. Norcott*, 176 N.C. 123, 96 S.E. 899 (1918), plaintiff-lessor sued to collect rent on certain commercial buildings under a lease. Defendant contended that the lease was illegal and void because the lessor did not connect the leased buildings to a municipal sewer system in violation of an ordinance which required the hook-up and made it illegal to maintain and use surface and dry privies. The Court held that the violation did not make the lease illegal and unenforceable.

> The imposition of a penalty for not doing an act which is required to be done may, of itself, render the doing of the same illegal; but still if, upon a fair construction of the statute, it appears to have been the intention of the legislative body to confine the punishment or forfeiture to the penalty pre-

scribed for a violation of it, that intention will be enforced. And the same may be said as to the prohibition of an act, but it does not follow in either case that the illegal act will vitiate a contract which is connected with it only incidentally because it relates to property affected, in some degree, by the statute or ordinance prohibiting or enjoining the act and annexing a penalty for its violation.

*Id.* at 128, 96 S.E. at 901. We do not believe the legislature intended that a lessee's construction of a billboard in violation of a billboard size ordinance should have the effect of making the lease, which is connected to the prohibited act only incidentally, illegal and void, nor do we find any basis for plaintiff's contention that because defendant violated the size ordinance from the very beginning, the lease is valid and enforceable but must be construed as not reverting to 2,400 square feet when the ordinance was amended.

We find that the express language of the contract required defendant to conform his sign to the ordinance. The original lease, signed 26 February 1983, contemplated the lease of a 40 foot x 60 foot portion of a larger lot. This agreement provided that *lessee* could terminate the lease if at any time the erection or maintenance of the sign was prohibited or a building permit could not be obtained. This agreement also provided: "This lease subject to *Lessor* being able to obtain necessary building permits." (Our emphasis.) This instrument was later amended to provide for the lease of 10,000 square feet, the whole lot, to revert to 2,400 square feet if the ordinance was amended to allow the existence of a billboard and a building on the remainder of the 10,000 square foot lot. The general rule is that "statutes and ordinances enacted subsequent to the execution of a contract, which add burdens or impair the obligations of the contract, may not be deemed to be a part of the agreement unless the language of the agreement clearly indicates this to have been the intention of the parties." 17A Am. Jur. 2d *Contracts* § 382 (1991).

We find that the lease clearly indicates the intention of the parties that defendant would conform its sign to the applicable ordinances. We find this because (1) the contract contains a clause which expressly states that the lease is subject to the lessor being able to obtain necessary building permits, (2) when the original instrument which included this clause was signed, it was for the lease of only a portion of a larger lot, (3) the lease was amended

to include the whole 10,000 square foot lot only when it was learned that the billboard and a building could not co-exist on the same lot, and (4) the amendment provided for a reduction in area leased and rent due, only when the ordinance prohibiting a sign and a building on the same lot was amended "so as to allow billboard signs on 2,400 square feet." Construing the lease as not requiring defendant to conform its sign to the various ordinances so that plaintiff "could obtain necessary building permits" would utterly nullify the express clause in the original instrument and would defeat the intent of the parties as revealed by the amendment of the original instrument and their inclusion of the reversion clause in paragraph 2.

Our interpretation of the contract leads us to the following conclusion. From the period 1 May 1983 to 7 November 1985, defendant owed (and did in fact pay) rent on 10,000 square feet as per the amended lease. The amendment to the sign size ordinance on 5 April 1984 had no immediate significance to rent payments since defendant was at that time paying rent on the whole 10,000 square foot lot. The 7 November 1985 amendment which allowed the co-existence of a sign and a building on a 10,000 square foot lot triggered the reversion clause in the amended lease so that from this time on defendant owed (and did in fact pay) rent on only 2,400 square feet. Therefore, defendant is not liable for any rent and the granting of summary judgment in favor of plaintiff on his first cause of action is reversed. Beginning 7 November 1985, defendant became liable under the contract for damages due to the presence of its nonconforming sign. However, damages, if any, can only accrue from the time that plaintiff first demanded that Summey remove its sign or conform it. The amount of damages is a jury question. Summary judgment in favor of plaintiff on his second cause of action is affirmed.

Affirmed in part, reversed in part and remanded.

Chief Judge HEDRICK and Judge WYNN concur.