# O'Hare *versus* Second National Bank of Titusville.

1. In a suit by a National Bank against an endorser on notes discounted for the drawer's accommodation, he filed an affidavit of defence that at the time of the discount the drawer was indebted to the bank for money lent in excess of one tenth of its capital ; and averred that the loan was void under the National Bank Act of June 3d 1864. *Held*, that the affidavit was defective in not averring that the excess was knowingly and voluntarily lent to the drawer.

2. Accidental excess made in mistake or ignorance will not forfeit an honest loan.

3. Such excess known to the bank only is not such an unlawful act as will avoid the loan.

4. The fact of excess of indebtedness is a matter aside from the loan, not entering into its terms and therefore collateral.

5. A loan of money and a note taken as security are part of the proper business of the bank within its power and therefore not illegal in themselves.

November 11th 1874.   Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.

Writs of error to the Court of Common Pleas of *Crawford county :* Of October and November Term 1874, No. 40 and 41.

On the 25th of June 1873, the Second National Bank of Titusville commenced an action of assumpsit against Hugh O'Hare.

The action was upon two notes, one for $1500, drawn by Paul W. Gatfield, dated January 21st 1873, payable in four months, to the order of the defendant and endorsed by him ; the other for $1300, drawn by H. A. Spear and C. Irwin, payable in sixty days, to W. H. Wallace, and endorsed by him and the defendant ; also, for an over-draft by the defendant on the plaintiff for $1437.07.

Appended to the declaration was a statement of the plaintiff's claim, to wit :—

"Plaintiff claims amount of Spear and Irvin note,      $1300.00
Interest from March 5th 1873.
Protest fees,         .         .         .         .         .              1.65
Amount of Garfield note,         .         .         .          1500.00
Interest from May 24th 1873.
Protest fees,         .         .         .         .         .              1.65
Amount of open account,         .         .         .          1437.07
Interest from June 16th 1873."

The "open account" was sworn to and also appended, as follows :—

"Hugh O'Hare, Esq., Titusville,
      In account with Second National Bank, Titusville,

| 1873. | | Dr. | Cr. |
|---|---|---|---|
| May 19, | | | $1325.00 |
| " 20, | | $2739.40 | 500.00 |
| " 21, | | | 1000.00 |
| " 22, | | 1517.65 | |
| June 16, | Interest on over-drafts for May, | 5.02 | |
| | | 4262.07 | $2825.00 |
| | | 2825.00 | |
| | Balance due, | $1437.07 | " |

On the 22d of July 1873, the defendant filed an affidavit of defence as follows :—

"The plaintiff is a banking association, organized and incor-
27 P. F. SMITH—7

[O'Hare *v.* Second National Bank of Titusville.]

porated under the Act of Congress approved June 3d 1864, commonly called the National Currency Act, and this suit is founded, *inter alia*, on a certain promissory note for fifteen hundred dollars, dated January 21st 1873, made by Paul W. Garfield, payable to the order of said defendant, four months after date, and delivered to said Paul W. Garfield, who negotiated the same in plaintiff's bank as a means of obtaining credit and borrowing money· in said bank. Affiant further says that he was only an accommodation endorser on said note, and received no value therefor from the said bank or said Paul W. Garfield, and further that when said note was discounted or negotiated in said bank, the indebtedness of said Garfield in said bank was then and previously in excess of one-tenth part of the amount of the capital stock of said banking association actually paid in, exclusive of the note in suit; that said note was not commercial or business paper actually owned by the said Paul W. Garfield, and the negotiating and discounting of said note by plaintiff was in violation of the 29th section of the aforesaid Act of Congress. This affiant further saith, that on the 17th of December 1872, the said Paul W. Garfield made his certain promissory note for fifteen hundred hundred dollars, payable to the order of the defendant, four months after date, which note was endorsed by defendant, and delivered to said Garfield, who negotiated the same in plaintiff's bank as a means of obtaining credit and borrowing money in said bank. Affiant further says that he was only an accommodation endorser on said note, and received no value therefor from said bank or said Garfield, and that when said note was discounted or negotiated in said bank the indebtedness of said Garfield in said bank was then and previously in excess of one-tenth part of the amount of the capital stock of said banking association actually paid in, exclusive of said note last-mentioned, and that said note was not commercial or business paper actually owned by the said Garfield; and that the negotiation and discounting of said note by plaintiff was in violation of the 29th section of the aforesaid Act of Congress. Said last-mentioned note has never been paid by the defendant, but on the 22d of May last the plaintiff's officers, without authority from defendant, sent him said note by mail, and charged up to his account in said bank the sum of $1517.65, being for the face of the said note, with $16 for interest thereon from April 20th to May 22d, at one per centum per month, and $1.65 protest fees. At that time affiant had a balance in his favor of $85.60 cash in said bank on deposit account, but by said illegal and unauthorized act of charging up said note, interest and cost, an apparent balance of $1432.05 stood on the books of the bank against affiant. Said apparent balance against affiant was termed by the officers of said bank an 'over-draft,' and on the 16th of June 1873, said bank made a further illegal charge against defendant of $5.02 for

[O'Hare v. Second National Bank of Titusville.]

'interest on over-draft for May,' meaning the said illegal over-draft of $1432.05, making a total of $1437.07 of alleged over-draft, for which affiant is sued (*inter alia*) in this case. Said proceeding of plaintiff is an attempt to collect said illegal note, interest and costs, amounting to $1522.67 by an indirect means, and under another name; and affiant claims a set-off to the amount of $85.50 of balance in his favor against any valid claim plaintiff may have against him in this suit. Affiant further says that when he endorsed the two notes aforesaid he had no knowledge that the plaintiff had over discounted or loaned or was about to over discount or loan to said Garfield, contrary to the provisions of said Act of Congress. Affiant further says plaintiff has knowingly reserved and is seeking to collect in this suit interest on the said two loans or discounts to Paul W. Garfield upon the notes aforesaid in excess of the rate of interest allowed by the 30th section of said Act of Congress, said interest having been charged and reserved at the rate of one per centum per month. Affiant admits to be due to plaintiff in this suit and hereby tenders a judgment for $1232.52, with interest thereon from May 22d 1873, and costs."

On the 10th of December 1873 the defendant filed a supplementary affidavit of defence, as follows:—

"That the indebtedness of Paul W. Garfield to the plaintiff, referred to in said affidavit of defence, at the time of the discount and negotiation of the note in question, on which defendant is sued as endorser, and of the other note referred to as sent to defendant by mail and charged, was for money borrowed of said Garfield by plaintiff, and did not include the discount of bonâ fide bills of exchange drawn against actually existing values, nor the discount of commercial or business paper actually owned by said Garfield."

On the 5th of January 1874 the court entered judgment against the plaintiff for want of a sufficient affidavit of defence, and the damages were afterwards liquidated at $4343.46.

On the 19th of August 1873 another action of assumpsit was commenced between the same parties. This action was on two promissory notes drawn by Garfield to the defendant's order and endorsed by him, one dated March 3d 1873 at four months for $1000; the other dated March 26th 1873 at four months for $1500.

On the 2d of October 1873 the defendant filed an affidavit and supplemental affidavit of defence, averring that the notes were not business paper, but used and discounted as means of borrowing money, and that Garfield was indebted to the bank to an amount in excess of one-tenth of the capital; substantially as in the affidavits in the first case.

The court entered judgment against the defendant, for want of a sufficient affidavit of defence, for $2573.55.

[O'Hare *v.* Second National Bank of Titusville.]

The defendant took a writ of error in each case; assigning for error that the court entered judgment against him for the whole amount of the claims.

*B. J. Reid* (with whom was *J. A. Neill*), for plaintiff in error, referred to Act of Congress, June 3d 1864, 2 Brightly's United States Digest 63, as follows:—

" The total liabilities to any association, of any person, or of any company, corporation or firm, for money borrowed, including in the liabilities of a company or firm the liabilities of the several members thereof, shall at no time exceed one-tenth part of the amount of the capital stock of such association actually paid in: *Provided*, that the discount of bonâ fide bills of exchange drawn against actually existing values, and the discount of commercial or business paper actually owned by the person or persons, corporation or firm negotiating the same, shall not be considered as money borrowed."

Courts will not assist a plaintiff in enforcing a contract arising out of an illegal transaction: Fowler *v.* Scully, 22 P. F. Smith 456; Coppell *v.* Hall, 7 Wallace 558; Holt *v.* Green, 23 P. F. Smith 198; Maybin *v.* Coulon, 4 Dallas 298. Although it may not be expressly prohibited but only a penalty imposed: Seidenbender *v.* Charles, 4 S. & R. 151; Columbia Bridge Co. *v.* Haldeman, 7 W. & S. 233; Burkholder *v.* Beetem, 15 P. F. Smith 496; Morris Run Coal Co. *v.* Barclay Coal Co. 18 P. F. Smith 174; Mitchell *v.* Smith, 1 Binney 110; Law *v.* Hodson, 11 East 300; Hall *v.* Franklin, 3 M. & W. 259; Foster *v.* Taylor, 5 Barn. & Ad. 887; Griffith *v.* Wells, 3 Denio 226; Wheeler *v.* Russell, 17 Mass. 258; Seneca Bank *v.* Lamb, 26 Barbour 595; Chilicothe Bank *v.* Swayne, 8 Ohio 254. A contract made by a corporation *ultra vires* or prohibited cannot be enforced: E. Anglian Railway *v.* E. Counties Railway, 7 Eng. L. & E. 505; McGregor *v.* Railway, 16 Id. 180; Norwich *v.* Norfork Railway, 30 Id. 120; Commonwealth *v.* Erie & N. E. Railroad Co., 3 Casey 339. The contract cannot be enforced whether the illegality be disclosed by the evidence of the plaintiff or defendant.

*R. Sherman* (with whom was *M. C. Beebe*), for defendant in error.—A mere omission of a direction or accidental commission of a prohibited act will not make the contract void: the affidavits do not aver that either the bank or Garfield knew of any violation of the law or intended any; such averment was necessary: 1 Parsons on Contracts 459; Kreis *v.* Seligman, 8 Barbour 439; Faickney *v.* Reynous, 4 Burrows 2069; Newbold *v.* Sims, 2 S. & R. 317. When the subject of a contract may be lawful or unlawful according to circumstances, the inference will not be that the contract was to do an unlawful act: Broom's Legal Maxims 518;

Lewis v. Davidson, 1 B. & Ald. 463 ; Williams v. East India Co.,
3 East 192.   The consideration of the contract must be illegal to
prevent the law from enforcing it; Armstrong v. Toller, 11
Wheaton 258; Story's Conflict of Laws, sect. 205–209; 2 Kent's
Com. 597–601; Hill v. Manchester, 2 B. & Ad. 544.   It is no
defence to a suit by a corporation on a contract that the powers
of the corporation were transcended : Silver Lake Bank v. North,
4 Johns. Ch. 370 ; Farnham v. Del. & Hud. Canal Co., 11 P.
F. Smith 265 ; Goundie v. Northampton Water Company, 7 Barr
233.

Chief Justice AGNEW delivered the opinion of the court, Janu-
ary 4th 1875.

The main question in these cases is, whether the notes in suit
are illegal, and cannot be recovered upon, because at the time they
were discounted the bank had previously lent the drawer, for whose
accommodation O'Hare endorsed, more than one-tenth part of its
capital.   It is contended that the discount was contrary to the
29th section of the National Bank Law of June 3d 1864, providing
that " the total liabilities to any association, of any person, or of
any company, corporation or firm for money borrowed, including
in the liabilities of a company or firm, the liabilities of the several
members thereof, shall at no time exceed one-tenth of the amount
of the capital stock of such association actually paid in : *Provided*,
That the discount of bonâ fide bills of exchange drawn against
actually existing values, and the discount of commercial business
paper, actually owned by the person or persons, corporations or
firms, negotiating the same, shall not be considered as money bor-
rowed."

The affidavits of defence, upon which the question is raised, do
not aver that the excess above one-tenth of the paid-in capital, was
knowingly and voluntarily lent to the drawer of the note.   This
defect in the affidavit would support the judgment, for surely it
cannot be contended that an accidental excess made in mistake or in
ignorance would forfeit an honest loan.   But without resting the
case on this defect, we cannot think that an excess known to the
bank only, is such an unlawful act, entering into the vitality of the
loan, as will avoid it.   The fact of an excess of indebtedness over
one-tenth of the paid-in capital is a matter aside from the loan
itself, not entering into its terms, and therefore collateral.   The loan
of the money is an act within the authorized power of the bank ;
a part of its proper business, and therefore, not in itself illegal.
The note or security given for the money was an instrument within
the power of the bank to accept.   The drawer had a right to make
it, and the bank a right to discount it.   In this lies the difference
between this case and that of Fowler v. Scully, 22 P. F. Smith
456, relied on as authority.   There the very instrument itself, a

[O'Hare *v.* Second National Bank of Titusville.]

mortgage of real estate, for future advancement, was illegal and void, being forbidden to the bank as well as to the mortgagor, who is presumed to know the law.   It appeared on the face of the mortgage that it was given to secure future discounts up to the sum of $100,000, and for the expressed purpose of enabling the mortgagor " to avoid the necessity of procuring the additional endorsement to said paper by a third party."   It therefore presented a case where both parties combined purposely to do an act expressly forbidden by the law, and where the thing itself (the mortgage) was the very ground of attempted recovery by scire facias, and the bank was directly asking the aid of the law and of the court to enforce the illegal instrument.   Fowler *v.* Scully is no authority for this case.   What might be the consequence if the bank and Garfield, the drawer, had combined knowingly and wilfully to defeat the restriction in the 29th section referred to, it is not proper to say or to speculate upon.   Therein, however, lies the difference between the case of the Morris Run Coal Company *v.* Barclay Coal Company, 18 P. F. Smith 174, cited and relied on, and this case.   There the contract was void because in restraint of trade, both parties were *in pari delicto*, and the draft sued on was the provided instrument for carrying the illegal agreement into execution.   Hence, it was said there, " the illegal consideration entered directly into the instrument, and is followed up, because the law will not permit itself to be violated by mere indirection."   Here the fact of the excess of indebtedness, and the bank's knowledge of the fact, were only collateral to the contract of discount, and not presumed to be within the knowledge of the borrower, and the note was not intended by both parties to be the instrument of committing a fraud upon the law.   Both the consideration and the note were lawful in themselves.   The affidavit does not charge combination or conspiracy to defeat the law.

Other considerations connect themselves with the question.   It was evidently not the intention of Congress to aim at the securities taken by the bank and declare them illegal, as it was in the 28th section, forbidding mortgages other than those taken to secure previously contracted debts.   The securities not being referred to in the 29th section, or declared illegal, we are at liberty to inquire into the true purpose of Congress, in considering whether we should declare the securities themselves illegal by implication.   If such were not the real intent of Congress, we ought not to raise an implication to defeat recovery.   Evidently the limitation of the indebtedness to the one-tenth in the 29th section, was intended as a general rule for conducting the business of the bank ; a rule laid down from experience to regulate its loans for its own best interest and those of stockholders and creditors, not a rule to regulate its customers.   It was, as remarked in Fowler *v.* Scully, a regulation to prevent these associations from splitting on the rock which has

[O'Hare v. Second National Bank of Titusville.]

ruined so many banks, to wit, that of lending too much of their capital to one person or firm. The intention being to protect the association and its stockholders and creditors from unwise banking, we cannot suppose it was meant to injure them by forbidding recovery of the injudicious loans. We should not interpret the section so as to carry its prohibition beyond its true purpose, and thus cause it to destroy the very interest it intended to protect by the regulation. To do so would be, as said by the court below, to demand a penalty in favor of an individual for an offence against the country, and invite to dishonesty under a pretence of a regard for the law.

As to the usurious interest we shall say nothing, the defendant in error having, in his paper-book, agreed to correct the judgments by proper deduction. We leave the enforcement of this agreement to the court-below, if the correction should not be voluntarily made.

Judgment affirmed.