GOLD-MINING COMPANY *v.* NATIONAL BANK.

1. A defendant, sued by a national bank for moneys it loaned him, cannot set up as a bar that they exceeded in amount one-tenth part of its capital stock actually paid in.

2. Where an agent, without authority, borrows moneys in the name of his principal, and the latter, when they have been applied to his use and payment is demanded of him, fails, within a reasonable time thereafter, to disavow the act of his agent, the jury is authorized to consider the principal as assenting to what was done in his name.

3. A juror in a civil action, who, on his *voire dire,* expresses an entire willingness, as well as ability, to accept the facts as they shall be developed by the evidence, and return a verdict in accordance with them, is not rendered incompetent by having previously conversed with a person about the case, and received an impression in relation to the facts.

ERROR to the Supreme Court of the Territory of Colorado. The facts are stated in the opinion of the court.

*Mr. Wheeler H. Peckham* for the plaintiff in error.
*Mr. J. M. Woolworth, contra.*

Mr. JUSTICE HUNT delivered the opinion of the court.

This was an action by the Rocky Mountain National Bank against the Union Gold-Mining Company of Colorado, to recover

a balance of overdraft, due upon the account kept at the bank, in the name of the company.   The balance of over-draft, exceeding $20,000, was created by drafts or checks drawn by one Sabin, who, claiming to be the authorized agent of the company, acted in its name, and made deposits from time to time to its credit.   The jury rendered a verdict in favor of the bank for the amount of the over-draft with interest ($30,358.32), and from the judgment entered upon that verdict the present writ of error is brought.

The defendant presented formal requests to charge to the number of forty, one of which was subdivided into three parts. It asked for a new trial upon ten grounds severally set forth; and the assignment of errors below discloses one hundred and thirty-three allegations of error.

There was but a single question in the case; to wit, Were the acts of Sabin the acts of the gold-mining company, either by original authority or by ratification? As it was finally put to the jury, Was there a ratification of his acts by the company? We shall consider the objections most seriously urged and having the greater plausibility.

The first objection to the recovery arises from the amount of the debt.   The plaintiff is a national bank organized under the act of Congress of June 3, 1864, with a capital stock of $50,000. 13 Stat. 99.   By the twenty-ninth section of that act, it is provided as follows: " The total liabilities to any association of any person, or of any company, corporation, or firm, for money borrowed, including in the liabilities of a company or firm the liabilities of the several members thereof, shall at no time exceed one-tenth part of the amount of the capital stock of such association actually paid in."   Rev. Stat., sect. 5200.

After obtaining and holding to its own use the money, can the mining company be allowed to interpose the plea that the bank had no right to loan the money?   In *Harris* v. *Runnels* (12 How. 79), where the defendant sued upon a note set up the illegality of its consideration, it was held that the whole statute then in question must be examined to discover whether it intended to prevent courts of justice from enforcing contracts in relation to the act prohibited; and that when a statute prohibits an act, or annexes a penalty for its commission,

it does not follow that the unlawfulness of the act was meant
to avoid a contract made in contravention of it.   A statute
provided that slaves should not be brought into the State with-
out a previous certificate signed by two freeholders.   Slaves
were brought in without such certificate and sold, and the pur-
chaser was held liable for the purchase-money.   Mr. Justice
Wayne said that the rule was allowed not for the benefit of
either party to the illegal contract, but altogether upon grounds
of public policy.

In *O'Hare* v. *The Second National Bank of Titusville* (77 Pa.
St 96), the question was made upon the statute we are con-
sidering, and it was objected that the bank could not recover
the amount of the loans in excess of the proportion specified.
The court held that the section of the statute referred to was
intended as a rule for the government of the bank, and that
the loan was not void.   See also *Pangborn* v. *Westlake et al.*,
36 Iowa, 546 ; *Vining et al.* v. *Bricker*, 14 Ohio St. 331.

We do not think that public policy requires or that Congress
intended that an excess of loans beyond the proportion speci-
fied should enable the borrower to avoid the payment of the
money actually received by him.   This would be to injure the
interests of creditors, stockholders, and all who have an interest
in the safety and prosperity of the bank.

We are of the opinion that this objection is not well taken.

It is contended that there was error in admitting Perrin to
sit as a juror in the cause.   It appears that he had previously
conversed with another party in relation to the facts of the
case, and had received from him an impression in relation to
them.   He expressed an entire willingness, as well as an ability,
to accept the facts as they should be developed by the evidence,
and to render a verdict in accordance with them.   He was evi-
dently an intelligent man, and well qualified to act as a juror in
such a case.   When his name was called, he was sworn to
answer truly to such questions as should be put to him touch-
ing his competency to sit as a juror in the case.   Questions
were put to him by the respective counsel, and were answered
by him, the result of which was as above stated.   At the close
of his examination, the record states as follows ; viz., " By the
court.   Well, I think he is competent.   Here the defendant

challenged the juror Perrin, for cause. The court denied the challenge, and the defendant then and there excepted to the ruling of the court." It is not so stated in words, but it is assumed that thereupon Perrin took his seat as a juror, and acted as such during the trial. The facts as stated by the juror do not justify a challenge for cause in a civil action. *Rogers* v. *Rogers*, 14 Wend. (N. Y.) 131; *Jackson* v. *The Commonwealth*, 23 Gratt. (Va.) 919; *Freeman* v. *The People*, 4 Den. (N. Y.) 9; *Lowenberg* v. *People*, 5 Park. Cr. (N. Y.) 414; *Sanchez* v. *The People*, 22 N. Y. 147.

The decision of the challenge was submitted to the judge, and we see no just cause of complaint in his decision.

Numerous objections were made to the admission and rejection of evidence, which do not require consideration. We refer only to the objection to the statements or admissions of Becker, the president of the mining company. These were made at various times at Colorado and at New York.

The defendant was a mining company organized under the laws of the State of New York, but whose mines and whose business (so far as it had any) were in Colorado. Sabin leased a part of their mines, and professed to carry on another portion of them on account of the company, and to borrow the money for its use in that business.

Becker spent much time in Colorado in attending to the company's business there; and, omitting the questionable position of Sabin, he was the only representative in that region.

The effort of the plaintiff on the trial was to show an original authority in Sabin to draw checks in the name of the company, and, failing in that, to establish a ratification of his acts by which the company would be chargeable. To this end, the knowledge of Becker of what was done by Sabin, and his action in relation thereto, were given in evidence.

The effect of this evidence and of the objections thereto is much diminished by the charge given by the judge, that the jury might assume that, prior to the 16th of December, 1868, Sabin had no authority to borrow money in its name, but that it was competent for the defendant to ratify the acts and assume the indebtedness created in its name. He further charged them that if Sabin was its agent, and borrowed money in its name

which was expended in the defendant's business, and the payment thereof was demanded of the defendant, they were to consider whether the defendant, with knowledge of the fact, assented to such demand, and approved the act of Sabin in obtaining the money; that if acts have been done by an agent in excess of his authority, and the principal on being informed of them fails to disavow them in a reasonable time, his silence may be considered as an acquiescence in and an assent to the acts done.

On the 16th of December, 1868, Becker, the president, closed up the accounts of the company with Sabin, and paid him the balance due to him. Sabin's books and the bank-books were then present, and Becker knew the amount of the indebtedness which had then been incurred by Sabin to the bank in the name of the company. This settlement was in the presence of the cashier of the bank, and made by his aid. This was clear and distinct notice to Becker of the action of this agent of his company in its name. Becker, as president of the company, was the suitable man to receive the information; and what he said and did about it, and what action in repudiating the doings of Sabin was taken by the company, or whether there was no disavowal, might well be learned from its chief officer.

Potter and Kountze were officers of the bank, and their conversations with Becker were of a similar character.

The court expressly informed the jury that these conversations were allowed for the purpose of showing Becker's knowledge of the indebtedness and the demand upon him for its payment, and not for the purpose of showing a promise on the part of the defendant.

We see no error in this branch of the case.

The judge's charge on the subject of the ratification by the company of the acts of Sabin contained all that it was necessary to say to the jury. It was in substance, that if Sabin was the agent of the company in working its mines in Colorado in 1867 and 1868, without authority to borrow money in its name, but did in fact borrow large sums of the plaintiff in its name, if, on the 16th of December, 1868, the president of the company was informed of such borrowing and of the amounts, and a

demand was made for the payment thereof, and if within a reasonable time thereafter the company failed to disavow the acts of its agent in so borrowing the money, the jury would be authorized to consider the company as assenting to what was done in its name.  We consider this charge entirely correct. *Vianna* v. *Barclay*, 3 Cow. (N.Y.) 281; *Hazard* v. *Spear*, 4 Keyes (N. Y.), 469; *Cairnes* v. *Bleecker*, 12 Johns. (N. Y.) 300.

*Judgment affirmed.*