DOYLE DRY GOODS COMPANY v. DODDRIDGE STATE BANK.

Opinion delivered October 24, 1927.

1. CORPORATIONS—LIABILITY ON NOTE EXECUTED BY OFFICERS.—In an action to establish, as the debt of a corporation, a note executed by its president and one of its directors, evidence *held* to sustain the chancellor's finding that the note was an obligation of the corporation.

2. BANKS AND BANKING—LOAN MADE IN VIOLATION OF BANKING LAW. —The fact that the amount of a loan to a corporation was split into two notes, one signed by the corporation and the other by its president and one of its directors, in order to circumvent Crawford & Moses' Dig., § 698, prohibiting a loan by a bank exceeding 30 per cent. of capital stock, *held* not to relieve the corporation of liability on both notes, since § 698 carries with it no penalty.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Trieber & Lasley,* for appellant.

*Frank S. Quinn* and *Shaver, Shaver & Williams,* for appellee.

McHANEY, J. This is an action to establish as the debt of appellant a $3,500 note executed by R. A. Doyle and H. W. Doyle, originally executed December 4, 1922, and renewed thereafter every 90 days, the last renewal being August 19, 1925, and for a judgment in said amount

against appellant, with interest. In 1922 appellant nego-
tiated a loan from appellee in the sum of $7,000, through
Mr. Milton Winham, president of appellee, and a direc-
tor in appellant company. This amount being in excess
of the amount appellee could lawfully lend to any one
borrower, it was arranged between appellant and appellee
that they would split the loan into two notes, one to be
executed by appellant, with personal indorsers, and the
other to be executed by said Doyles, with $7,000 stock in
appellant as collateral. Accordingly, on November 29,
1922, Mr. Winham, acting for appellee, wrote Mr. J. P.
Blanks, vice president of appellant, and who was acting
for appellant, in part as follows:

"In accordance with our talk a few days since about
the loan from the Doddridge State Bank of Doddridge,
Arkansas, I am herewith handing you two notes for
$3,500 each. One of these is for a loan to the company,
properly executed by same, and the other to be loaned
to the company through one of the men in the house,
and secured by twice the amount of stock in the company,
properly executed, with the releases, as you stated. You
know just how to fix these up legally, and I will ask that
you do all this and send same to me at Texarkana, and I
will have exchange sent to the company according to your
directions. * * *"

And in concluding the letter, said: "Kindly have it
all fixed up so that we can get by the Bank Commissioner
without criticism, and mail to me here, and I will attend
to it."

In response to this letter, Mr. Blanks, on Decem-
ber 1, wrote Mr. Winham two letters; one in which he
inclosed the note signed by appellant and indorsed by
certain individuals, and in the other he inclosed the note
signed by the Doyles, with the stock as collateral. Both
notes were executed on the same date, to-wit, December
4, 1922, and, on receipt of said notes and collateral, exe-
cuted and indorsed in accordance with said agreement,
appellee mailed exchange to appellant in the sum of
$7,000. Thereafter, from time to time, as the notes

became due and were renewed, notices were sent to appellant and remittances were made by it for the interest on both notes, and several letters passed between appellant and Mr. Winham, acting for appellee, regarding the matter. On August 19, 1925, the last renewal was made, and neither of the notes was paid at maturity, but finally appellant paid the note executed by it, and on February 4, 1926, Mr. Blanks wrote a letter to Mr. Winham, in which, for the first time, he intimated that the note executed by the Doyles was not in fact an obligation of the company. Mr. Winham answered this letter immediately, on February 6, and advised Mr. Blanks that he would not agree with his interpretation of the matter, and in which he asserted that the Doyle note was a note of the company, and that it was arranged that way by Mr. Blanks; that the company got the money, paid the interest, and that the company would be expected to pay. Thereafter suit was brought in the Pulaski Chancery Court to have this note declared the indebtedness of the company, and to impound the funds of appellant in the hands of R. C. Wilkins, who was placed in charge of the business of appellant as a creditors' manager, or liquidating agent, and to enjoin him from disposing of the funds without taking this note into consideration. On a hearing the chancellor found that the note in question was an obligation of the company, and rendered judgment against it, with interest, amounting to $3,729.60, from which comes this appeal.

We think the chancellor was right in so holding. The very great preponderance of the evidence shows this to be the fact, and the letter written by Mr. Winham on November 29 conclusively, to our minds, shows this to be true. At any rate, we cannot say that it is against the preponderance of the evidence. This being true, the contention of counsel for appellant that this is a suit for the reformation of a written contract, and that therefore the rules of evidence applicable to reformation apply, cannot be sustained. It was simply a suit by appellee to have this note established as the obligation of appellant.

An action for reformation is usually based on a mutual mistake, or a mistake of one party accompanied by fraud or other inequitable conduct on the part of the other party. *American Alliance Ins. Co.* v. *Paul,* 173 Ark. 960, 294 S. W. 58; *Welch* v. *Welch,* 132 Ark. 227, 200 S. W. 139. There are no allegations to this effect in this complaint, and the only issue made by the complaint was whether or not appellee loaned appellant $7,000 and took notes in evidence of the transaction, as charged in the complaint. This court has heretofore held that a note executed by one person may be in fact shown to be the real debt and obligation of another person. *Richeson* v. *National Bank of Mena,* 96 Ark. 594, 132 S. W. 913. And it is only necessary to show this fact by a preponderance of the evidence. It was not even necessary that the contract be in writing. It was not within the statute of frauds, and the same rule of evidence would obtain.

Appellant next insists that appellee is not entitled to recover, irrespective of reformation, for the reason that the loan was made in violation of the law, and that, of necessity, in making out his case he is forced to rely on an illegal transaction, and that in such cases relief will be denied. This contention is based on § 698 of C. & M. Digest, which is as follows:

"No bank in this State shall lend its money to any individual, corporation or company, directly or indirectly, or permit any individual, corporation or company to become, at any time, indebted or liable to it in a sum exceeding thirty per cent. of its capital stock actually paid in, or permit a line of loans or credits to any greater amount to any individual or corporation; a permanent surplus, the setting apart of which shall have been certified to the Commissioner, and which cannot be diverted without due notice to said officer, may be taken and considered as a part of the capital stock for the purposes of this section. Provided, that the discount of the following classes of paper shall not be considered as money borrowed within the meaning of this section. * * *"

This provision of the banking law was enacted for the protection of depositors, creditors and stockholders. It carries with it no penalty. It has no provision making an excessive loan void or unenforceable as against the borrower. This section was amended in 1927 in many particulars, none of which are applicable to this case; but, in the third section of the amendatory act, a penalty is fixed for the violation thereof by the officers and directors knowingly permitting excess loans, making them personally liable for the excess amount of the loan in the event the bank should sustain loss by reason of such excess. See act 174, Acts 1927, page 612.

It was not the intention of the Legislature enacting this law, as more plainly appears in the amendatory act, to relieve the borrower from liability on account of the violation of the law by the officers of the bank, and, as was said in the case of *Richeson* v. *National Bank of Mena, supra,* "It has been held by the Supreme Court of the United States that the action of a national bank in making an excessive loan contrary to the national banking law could only be objected to by the Government, and that the debtor could not urge the prohibitive provisions of the national statute against a recovery of such excessive loan." *Nat. Bank* v. *Matthews,* 98 U. S. 621, 25 L. ed. 188; *Nat. Bank* v. *Whitney,* 103 U. S. 99, 26 L. ed. 443; *Gold Mining Co.* v. *Nat. Bank,* 96 U. S. 640, 24 L. ed. 648. Section 745 of C. & M. Digest only provides a penalty for overdrafts and has no relation to § 698. The only penalty we have been able to find fixed by law for a violation of the excessive loan act is that contained in the act of 1927, above referred to.

We therefore hold that, although this was an excessive loan and made in such a way as to avoid criticism of the Bank Examiner, yet it could not have the effect of destroying the obligation to pay, and that the only person who could question the matter at all would be the State, through the Bank Commissioner. The decree of the chancery court is therefore right, and is in all things affirmed.