## NATIONAL SURETY CO. v. ANACOSTIA FINANCE CORPORATION.

Court of Appeals of District of Columbia. Submitted April 4, 1928. Decided June 4, 1928.

No. 4647.

1. **Principal and surety** ⬡190(7)—**Finding that bank executing indemnity bond had no interest or claim to funds attached, and for which surety bond was given, held not sustained.**

In suit for discovery and for other relief growing out of transaction wherein plaintiff was required to pay surety bond, finding that bank executing indemnity bond to surety had no interest in, or claim to or against, the funds attached, and for which surety bond was given, *held* not sustained by evidence.

2. **Principal and surety** ⬡190(7)—**Finding that indemnity bond was not executed by bank securing release of attached funds held not sustained.**

In suit for discovery and for other relief growing out of transaction wherein plaintiff was required to pay surety bond, finding that indemnity agreement was not executed by bank to secure release of funds attached *held* not sustained by evidence.

3. **Banks and banking** ⬡315(2)—**President of trust bank had authority to execute indemnity agreement.**

President of trust bank, held out as such in conduct of its banking transactions and authorized to execute papers and agreements necessary for protection of bank in its business, *held* to have had authority to execute indemnity agreement for purpose of securing release of attached funds.

4. **Banks and banking** ⬡315(2)—**Directors of trust bank, having knowledge of payment of premium on surety bond and acquiescing therein, ratified execution thereof by president.**

Action of president of trust bank in executing indemnity agreement for purpose of securing release of attached funds *held* to have been fully and completely ratified by directors acquiescing therein after knowledge that bill for premium on surety bond had been paid and acquiescing therein for a period of one year.

5. **Banks and banking** ⬡315(2)—**Trustees of trust bank, on notice that president had executed indemnity bond, had duty of either rescinding action or permitting it to stand.**

In case president of trust bank exceeded authority in executing indemnity bond for purpose of securing release of attached funds, it was duty of trustees, on notice of such action, express or constructive, to exercise election either *to rescind action or to permit it to stand,* and thereby ratify it.

6. **Equity** ⬡141(1)—**Bill for discovery and other relief growing out of transaction wherein plaintiff was required to pay surety bond stated sufficient grounds to authorize relief in equity.**

Bill for discovery and for other relief growing out of transaction wherein plaintiff was re-

quired to pay surety bond, showing that bank executing indemnity agreement had turned assets to another corporation, and that plaintiff was not advised of the amount of assets sold or property transferred, nor of agreement on part of corporation to assume and pay debts of bank, *held* to set forth sufficient grounds to authorize relief in equity.

Appeal from the Supreme Court of the District of Columbia.

Suit by the National Surety Company against the Anacostia Finance Corporation. Decree of dismissal, and plaintiff appeals. Reversed and remanded.

J. H. Bilbrey, of Washington, D. C., for appellant.

C. T. Clayton and N. C. Turnage, both of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices; and SMITH, Judge of the U. S. Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellant Surety Company, plaintiff below, a New York corporation, filed a bill in equity against the defendant corporation, organized under the laws of Maryland, with its principal place of business at 1205 Good Hope Road, S. E., Washington, D. C., for discovery and for other relief growing out of a transaction wherein plaintiff company was required to pay a surety bond in the sum of about $8,000. From a decree dismissing the bill, the case comes here on appeal.

It appears that, prior to the time of the transaction involved in this suit, the Premier Finance Company, Inc., a personal service corporation, attempted to promote and organize under the laws of the state of Arizona the Merchants' & Farmers' Bank, for the purpose of doing business in the District of Columbia at 1205 Good Hope Road. After the Arizona charter was procured, it was found that the bank could not qualify to do business under the laws of the District of Columbia. It was then decided by those in charge to operate the bank as a common-law organization. On September 11, 1922, Raymond E. Huntt, president of the bank, and one J. Cris Wood, claiming to be the board of trustees of the bank, executed a declaration of trust for the organization of a bank to be known as Merchants' & Farmers' Bank. The trust bank thus formed opened its doors for business on September 11, 1922, with a paid-in capital of about $29,000, which had been collected by the Premier Finance Corporation from the subscribers to the capital stock of the Arizona corporation.

It further appears that in June, 1922, in a suit by one Chipman against the Premier Finance Corporation, an attachment was levied on a fund of $7,750.68 on deposit in the Second National Bank of Washington to the credit of the Premier Finance Corporation. It also appears that the Finance Corporation and the bank, through Willis H. Fowle, treasurer of the Finance Corporation, and Huntt, president of the bank, applied to the plaintiff company for a bond to run to Chipman, the plaintiff in the suit against the Finance Company, for the release of the funds attached and on deposit in the Second National Bank. Plaintiff refused to give the bond unless the bank would indemnify it against loss. An indemnity agreement was accordingly executed by Fowle on behalf of the Finance Corporation, and by Huntt on behalf of the bank. The bond was given, and the money was paid by the Second National Bank and deposited in the Merchants' & Farmers' Bank by Huntt and Fowle as trustees. On the determination of the suit of Chipman against the Finance Company in 1925, a judgment was entered in the sum of $7,750, together with costs and interest, against the plaintiff Surety Company, which it was compelled to pay, and which forms the basis of the present suit.

It further appears that in the latter part of 1923 the trustees of the then operating Trust Bank organized the defendant, Anacostia Finance Corporation, for the purpose of taking over the assets, property, and assuming the liabilities of the Trust Bank. Accordingly, in pursuance of a resolution of the stockholders, all the capital, property, and assets of the Trust Bank were transferred to the Anacostia Finance Corporation, which in turn issued its shares of stock to the stockholders of the Trust Bank. At the conclusion of the trial below, the learned trial justice made the following findings of fact:

"(1) That the Merchants' & Farmers' Bank, created by and operating under a declaration of trust dated September 11, 1922, had no interest in, claim to, or made a claim against the funds attached in the Second National Bank.

"(2) That the indemnity agreement described in paragraph 6 of plaintiff's bill and received in evidence as Plaintiff's Exhibit No. 4 was not executed by said Merchants' & Farmers' Bank, a trust, but was executed by the Merchants' & Farmers' Bank, a corporation.

"(3) That said indemnity agreement did

not purport to be executed by Merchants' & Farmers' Bank, a trust; that Raymond E. Huntt, president of said trust organization, had no authority to execute the same, and the said trust did not ratify said agreement.

"(4) That the undertaking received in evidence as Plaintiff's Exhibit No. 6 and filed in the case of Chipman v. Premier Finance Co., released a fund which was never claimed by said Merchants' & Farmers' Bank, a trust, as its property, and said fund in fact was claimed by the subscribers to the Merchants' & Farmers' Bank, a corporation, a bank which was chartered, but not organized, under the laws of Arizona.

"(5) That if said indemnity agreement had been binding on, and created an obligation against, the Merchants' & Farmers' Bank, a trust, plaintiff's petition does not set forth grounds entitling it to the relief in equity sought by the prayers of its bill."

The errors assigned are based upon the alleged error of the court below in reaching its conclusion as set forth in the foregoing findings of fact. The question presented, therefore, is whether or not the decree can be sustained, in view of the evidence as set forth in the record.

[1, 2] We will consider first the finding of the court that the Trust Bank "had no interest in, claim to, or made a claim against the funds attached," and the further finding that the indemnity agreement was not executed by the Trust Bank, but by the Merchants' & Farmers' Bank, the Arizona corporation. These findings, we think, are not supported by the evidence. It will be observed that the Trust Bank was organized and took over from the Finance Corporation the stock and proceeds of the Arizona Corporation on September 11, 1922, and it was not until November following that the indemnity agreement and bond transaction occurred. In the application for the bond Huntt certifies that the application is made by him for the Merchants' & Farmers' Bank, and in answer to the question of "Occupation or employment" he answered, "Banking." And to the question, "How long engaged in this business?" he answered, "Since September 11th." Thus he specifically identified the Trust Bank. The bond was executed on October 12, 1922, and signed, "Merchants' & Farmers' Bank by Raymond E. Huntt, President," and by the "National Surety Company, W. H. Ronsaville, Attorney in Fact."

According to the testimony of Herbert E. Parker, one of the witnesses to the bond, it "was executed in the directors' room in the rear of the bank building, 1205 Good Hope Road, Anacostia, D. C., at the time the bank was in operation." Wood, who with Huntt signed the declaration of trust organizing the Trust Bank, testified that all the assets of the bank were sold to the Anacostia Finance Corporation, and that it "agreed to pay the debts of the Merchants' & Farmers' Bank, a trust."

John W. Kauffman, a witness for defendant, testified that in November, 1922, he was employed as bookkeeper for the Premier Finance Company; that the subscription book of the Merchants' & Farmers' Bank, a corporation, showed the names of the subscribers to its stock, down to about November 1, 1922. He testified that the money that came in on account of subscriptions was deposited in the Second National Bank in the name of the Finance Company; that, when acting as bookkeeper for the Finance Company, he used part of the building at 1205 Good Hope Road. After the organization of the Trust Bank, he occupied the back room, called the directors' room; that they accepted no subscriptions after the organization of the Trust Bank, but collected subscriptions which were deposited in the Trust Bank "to the credit of Huntt and Fowle, trustees." On cross-examination, Kauffman testified that the "Merchants' & Farmers' Bank, a corporation, never issued any stock, never did a banking business, and none of the money collected by the Premier Finance Company was ever turned over to the Arizona corporation."

The most conclusive proof, we think, that the indemnity agreement was made and the bond secured by the Trust Bank, is found in the application for the bond, wherein it is stated by Huntt that the applicant bank had at that date resources in the amount of $131,526.03. As throwing light on this statement, Huntt testified in the present case that the proposed Arizona corporate bank "never issued any stock, never had any capital or assets or property, and never did a banking business."

The execution of the indemnity agreement by Huntt, acting on behalf of the Trust Bank, is conceded in defendant's answer to the bill as follows: "That long after that period (April, 1923), and in fact not until shortly before the suit of Chipman v. Premier Finance Company had gone to trial, the directors of the said Merchants' & Farmers' Bank, a common-law trust, learned for the first time that in November, 1922, by collusion and without notice to them, the said Premier Finance Company and the said

Huntt, representing himself to be acting as president of the Merchants' & Farmers' Bank, and against their rights and interest, had requested plaintiff to execute an undertaking in the attachment suit of C. N. Chipman against said Premier Finance Company, and had entered into an indemnificatory agreement with plaintiff as inducement to said plaintiff to execute said undertaking."

This constitutes, we think, a clear admission that the agreement was executed through its president by the Trust Bank. After admission of the execution of the agreement, it attempts to avoid through an indirect denial of authority on the part of Huntt, its president, to bind the bank by such an agreement.

It may well be that, as contended by Huntt and Fowle, the release of the funds was sought originally for the purpose of inducing the Comptroller of the Currency to authorize the Arizona corporation to do business in the District, but we think it clear that the Trust Bank was the agency through which this was attempted to be accomplished. By the terms of the declaration of trust organizing the Trust Bank, the purpose is indicated of continuing the business of the Trust Bank only until the difficulties encountered in completing the corporate organization had been abated. This is also indicated by a petition of intervention filed in the Chipman suit by Charles T. Clayton, president of the Anacostia Finance Corporation, in which he states in effect that the Trust Bank was wound up and its assets turned over to the Finance Corporation as soon as the hope of completing the incorporated bank was abandoned. Huntt also testified to the effect that, after the release of the funds, under the bond, he attempted to get supervision from the Comptroller of the Currency for the Arizona bank. We think it clear, therefore, that the release of the funds was procured at the instance of the Trust Bank, and that the indemnity agreement to secure the plaintiff Surety Company was the contract of that institution.

It follows, in disposing of the fourth finding of fact by the court below, that whether the Trust Bank ever claimed as its property the fund recovered, or not, the fund was recovered through its intervention, and the trustees deposited the fund in the Trust Bank, where it remained at the time its assets and liabilities were turned over to the Finance Corporation. It came into the hands of the Finance Corporation, and was assumed by it as an obligation of the Trust Bank.

[3] Nor can we sustain the court's third finding of fact to the effect that Huntt, as president of the Trust Bank, had no authority to execute the indemnity agreement, and that the agreement was not ratified. Hunt was the president of the bank and was held out as such in the conduct of its banking transactions, and as such was authorized to execute papers and agreements necessary for the protection of the bank in the general course of its business.

[4] However, we think his action was fully and completely ratified by the directors of the bank. On October 27, 1924, a regular meeting of the trustees was held at the bank, and from the minutes of the meeting it appears as follows: "Bill from National Surety Company for annual premium on indemnity bond in case of C. N. Chipman v. Premier Finance Corporation and Merchants' & Farmers' Bank was taken up and referred to Mr. Clayton to determine the present status of the case and the necessity of continuing the bond." At the next regular meeting of the trustees, November 10, 1924, the following minute appears: "Mr. Clayton reported that he had investigated the status of the bond given to the National Surety Company in the case of · C. N. Chipman v. Premier Finance Corporation and that he would arrange for the case to come to trial at an early date."

While it appears that this second bill for premium on the bond was not paid, the record of the former payment had been on the books of the bank for a year and was full notice to the directors of the action of the bank through its president in connection with the execution of this agreement. Such notice, acquiesced in for that period, amounts to ratification.

[5] Assuming that Huntt, as president, exceeded his authority, which is not altogether clear, but which, we think, is immaterial, it was the duty of the trustees, on notice of such action, express or constructive, to exercise its election either to rescind the action or to permit it to stand, and thereby ratify it. Fry v. United States, 3 Wall. 451, 457, 18 L. Ed. 197; Southern Life Insurance Co. v. McCain, 96 U. S. 84, 24 L. Ed. 653; Gold Mining Co. v. National Bank, 96 U. S. 644, 24 L. Ed. 648.

In the McCain Case the question involved was the effect of a notice by an agent that an insurance premium had been paid, where a company sought to avoid liability on the ground that the agent had exceeded his authority. On this point the court said: "The law on the silence of the company, after re-

ceiving the statement of the agent that the premium had been paid, is also free from doubt. Silence then was equivalent to an adoption of the act of the agent, and closed the mouth of the company ever afterwards."

It is important, as bearing on this case, that the record is silent as to any disaffirmance by the trustees of the Trust Bank, even after it had notice of the second premium. Mere failure to pay is not sufficient to establish a disaffirmance. There must be some formal dissent, and notice thereof to the company claiming under the agreement. No such action seems to have been taken. The rule in such cases is clearly stated in Pennsylvania Railway Co. v. Keokuk Bridge Co., 131 U. S. 371, 9 S. Ct. 770, 33 L. Ed. 157, as follows:

"When the president of a corporation executes, in its behalf, and within the scope of its charter, a contract which requires the concurrence of the board of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified his act. * * * And when a contract is made by any agent of a corporation in its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract, without objection, it may be presumed to have authorized or ratified the contract of its agent."

In the present case, not only had the funds secured by this agreement been deposited in the Trust Bank, and thereby had gone into its possession, but the first premium had been paid by cashier's check, all of which constituted constructive notice of some transaction in which the bank was obligated that called for inquiry on the part of the trustees, and the bank cannot now disaffirm the authority of its president to act in the premises and claim lack of constructive ratification through the negligence of its trustees.

[6] The fifth finding of the court below is to the effect that, even if the indemnity agreement was binding on the Trust Bank, plaintiff's petition fails to set forth sufficient grounds to entitle it to relief in equity. We think the bill, when analyzed, is sufficient to sustain the present action. Plaintiff was compelled to seek discovery in this case. It was advised that the Trust Bank had completely turned its property and assets over to the Finance Corporation, but plaintiff was not advised of the amount of the assets or property so transferred. Nor was it advised of the agreement on the part of the Finance Corporation to assume and pay the debts of the Trust Bank. Not until disclosed at the trial did it discover that the officers and directors of the Trust Bank were in fact the incorporators of the Finance Corporation, and as such charged with knowledge of the Trust Bank's agreement to indemnify the plaintiff. In this situation we think the case was clearly one for equity. Certainly, with the knowledge that plaintiff had at its command, it could not have proceeded in an action at law. Of course, if, in further proceedings and before a final decree is entered, it is found necessary to amend the bill in any particular, this will be permitted.

The decree is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.