David A. VALENTE, Josephine M. Valente and Bruce D. Emig, Plaintiffs,

v.

John W. DENNIS, Morton R. Levy, Raymond G. Perelman, Ronald O. Perelman, Howard W. Seiple, Robert W. Moore, Theodore Lightcap, Stanley F. Hahn, Irving W. Coleman, Jack B. May, Warran B. Pattiz, Joan R. Pattiz, Clarke E. Sechler, Bernard Bergman, William Brandeis, Howard O. Jones, Defendants.

No. 76–1493.

United States District Court, E. D. Pennsylvania.

Aug. 3, 1977.

David F. Dunn, Allentown, Pa., for plaintiffs.

Alan C. Kauffman, Bernard Bergman, Philadelphia, Pa., Irving W. Coleman, Allentown, Pa., for defendants.

1. According to the complaint, MLS is currently in Chapter XI bankruptcy proceedings.

2. In paragraph 5 of the complaint, plaintiffs allege that "jurisdiction herein is based upon 12 U.S.C. §§ 503, 84, 375, 375a, 376 and 71a and regulations thereunder, and claims ancillary thereunto." None of these sections is a juris-

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiffs herein are shareholders of Municipal Leasing Systems (MLS), a Pennsylvania corporation.[1] Each of the defendants is, or has been at allegedly relevant times, a member of the Board of Directors of the Northampton National Bank of Easton (Bank). During the period in question, MLS was a customer and borrower of the Bank. The complaint alleges that various acts of mismanagement and violations of the federal banking laws and state laws by the Bank resulted in substantial losses to plaintiffs.

Defendants have moved to dismiss, pursuant to both Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, and Fed.R. Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.[2] In connection with 12(b) motions, the Third Circuit has recently stated:

> The basic difference among the various 12(b) motions is, of course, that 12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects. Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. The decision disposing the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations, he or she would be unable to prevail. In the interests of judicial economy it is not improper to dispose of the claim at that stage. . .

The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different. . . . Because

dictional section. Fed.R.Civ.P. 8(a), which requires "a short plain statement of the grounds upon which the court's jurisdiction depends . . . " was not observed. Nevertheless, we will proceed to make a determination since sufficient facts and federal statutes have been alleged.

at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977) (footnote omitted).

The Supreme Court also has recently dealt with the distinction between motions to dismiss for lack of subject matter jurisdiction, and motions to dismiss for failure to state a claim upon which relief can be granted. In *Hagans v. Lavine,* 415 U.S. 528, 542, 94 S.Ct. 1372, 1381, 39 L.Ed.2d 577 (1974), the Court stated:

> Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.[3]

*See* C. Wright, *Law of Federal Courts* 72 (3d ed. 1976).

█ Since plaintiffs' claims arise under the federal banking laws, this Court has subject matter jurisdiction pursuant to ei-

ther 28 U.S.C. § 1331 or § 1337.[4] Therefore, defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) will be denied. The question remains, however, whether plaintiffs have stated a cause of action under the federal statutes which they have pleaded.

In 1974, MLS brought suit in this court against the Bank alleging misappropriation of plaintiffs' funds. Jurisdiction was alleged pursuant to "the laws of the United States, Title 12, Banks and Banking, various sections, and regulations of the Federal Reserve Board thereunder, and rules and regulations of the Federal Reserve Bank of Philadelphia and Treasury Regulations." The complaint was dismissed without prejudice for lack of subject matter jurisdiction by my learned colleague, Judge VanArtsdalen.

MLS filed a second complaint, once again naming the Bank as defendant, alleging jurisdiction pursuant to 12 U.S.C. §§ 71a, 84 and 86. In *Municipal Leasing Systems, Inc. v. Northampton National Bank,* 382 F.Supp. 968 (E.D.Pa.1974), Judge VanArtsdalen dismissed this complaint on the ground that no claim upon which relief could be granted had been stated under 12 U.S.C. §§ 71a, 84 or 86.

In the present action, the third complaint filed in this court concerning this matter, plaintiffs are the shareholders of MLS while defendants are the directors of the Bank. Sections 71a and 84 of Title 12 are again pleaded together with other sections of Title 12 as creating a federal cause of action. 12 U.S.C. § 84, simply stated, prohibits national banks from making loans to one customer in excess of ten percent of the bank's total assets. Plaintiffs allege that the Bank violated this provision in making excessive loans to MLS and, apparently, that these excessive loans were too large

---

**3.** *Quoting Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**4.** 28 U.S.C. § 1331 confers federal district courts with jurisdiction over controversies arising under the laws of the United States provided the matter in controversy exceeds $10,000. 28 U.S.C. § 1337 gives federal district courts jurisdiction over civil actions "arising under

any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." Jurisdiction over actions arising under federal banking laws is properly founded on 28 U.S.C. § 1337. *Acker v. Provident National Bank,* 512 F.2d 729, 732, n. 8 (3d Cir. 1975).

786

for the bank to manage properly and that the consequent mismanagement resulted in damage to plaintiff. In *Municipal Leasing Systems, Inc. v. Northampton National Bank, supra* at 971, the court stated that "[i]f a national bank exceeds its lending capacity, no private cause of action is afforded to a private borrower," *citing Union Gold-Mining Co. v. Rocky Mountain National Bank,* 96 U.S. 640, 24 L.Ed. 648 (1878). It follows, then, that the same rule should apply to the shareholders of the borrower. Since the decision in *Municipal Leasing Systems,* the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), promulgated a four-part test to be applied where implication of a private cause of action is sought: (1) whether plaintiffs are part of "the class for whose *especial* benefit the statute was enacted"; (2) whether there is any indication of congressional intent to create or deny a private remedy; (3) whether the implication of a private remedy is consistent with the underlying purpose of the legislative scheme; and (4) whether the matter is one traditionally of state concern. *See Rauch v. United Instruments, Inc.,* 548 F.2d 452, 456 (3d Cir. 1976).

■ Section 84 was enacted in 1864 as part of the regulation of national banks. In purpose, it has been described as

a rule laid down from experience to regulate [the bank's] loans for its own best interest and those of its stockholders and creditors, not a rule to regulate its customers. It was . . . a regulation to prevent these associations from splitting on the rock which has ruined so many banks, to wit, that of lending too much of their capital to one person or firm. The intention [was] to protect the association and its stockholders and creditors from unwise banking . . . .

*O'Hare v. Second National Bank,* 77 Pa. 96, 102–3 (1874), cited with approval in *Union Gold-Mining Co. v. Rocky Mountain National Bank, supra.* Section 84, therefore, was

designed principally to protect the finances of the bank and not to benefit borrowers of the bank.[5]

■ Moreover, it is inconsistent with the underlying purpose of the legislative scheme to imply the creation of such a cause of action. Such a remedy would sanction violations of the Act by compensating those who were parties to and beneficiaries of a forbidden excessive loan. Further, since 12 U.S.C. § 93 provides for the enforcement of the scheme through the Comptroller of the Currency, implying a private right of action in plaintiffs' favor may impair, rather than enhance, the legislative scheme. *Cf. Securities Investor Protection Corporation v. Barbour,* 421 U.S. 412, 421, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975). Consequently, we hold that no cause of action was created in favor of plaintiffs by 12 U.S.C. § 84.

■ In connection with 12 U.S.C. § 71a, plaintiffs allege the Bank had only four directors between January 1, and April 30, 1974 and that "Defendants failed thereby to exercise the requisite degree of control over the affairs of the Bank" and that this failure resulted in the mismanagement of plaintiffs' funds and damage to plaintiffs. Section 71a provides that the Board of Directors of a national bank "shall consist of not less than five nor more than twenty-five members." It goes on to provide:

If any national banking association violates the provisions of this section and continues such violation after thirty days' notice from the Comptroller of the Currency, the said Comptroller *may* appoint a receiver or conservator therefor . . . (emphasis added).

In *Municipal Leasing Systems v. Northampton National Bank,* 382 F.Supp. 968, 971 (E.D.Pa.1974), the Court stated:

The [National Banking] Act is specific as to the procedure for imposing penalties or sanctions through the Comptroller of Currency for any violation of 12 U.S.C.

---

**5.** A second purpose of § 84 is "preventing undue reliance upon the financial standing of borrowers." *Corsicana National Bank v. Johnson,* 251 U.S. 68, 83, 40 S.Ct. 82, 89, 64 L.Ed. 141

(1919). Plaintiffs, shareholders of one of the borrowers upon whose financial standing the Bank relied, are not the intended beneficiaries of this purpose.

§ 71a, and it clearly does not give a borrower any private civil cause of action.[6] We agree. Furthermore, we perceive no reason why this conclusion should not extend to shareholders of the borrower. We note that the Comptroller of the Currency is required by the statute to give thirty days notice before imposing sanctions. Consequently, a bank has thirty days to comply with the statute before the sanctions may be imposed. There is no basis on which one can find that section 71a was enacted for the "especial" benefit of these plaintiffs or that the statute creates a cause of action in their favor. Consequently, we hold that no cause of action was created in favor of plaintiffs by 12 U.S.C. § 71a.

▪ Plaintiffs also allege a cause of action pursuant to 12 U.S.C. § 503 which provides:

If the directors or officers of any member bank shall knowingly violate or permit any of the agents, officers, or directors of any member bank to violate any of the provisions of sections 375, 375a, and 376 of this title or regulations of the board made under authority thereof, or any of the provisions of sections 217, 218, 219, 220, 655, 1005, 1014, 1906, or 1909 of Title 18, every director and officer participating in or assenting to such violation shall be held liable in his personal and individual capacity for all damages which the member bank, its shareholders, or any other persons shall have sustained in consequence of such violation.

Section 503 may create a cause of action in "any other person" if the directors of the bank have knowingly violated sections 375, 375a or 376 of Title 12 or the provisions of Title 18 mentioned in the section. 12 U.S.C. § 375 provides:

Any member bank may contract for, or purchase from, any of its directors or from any firm of which any of its directors is a member, any securities or other property, when (and not otherwise) such purchase is made in the regular course of business upon terms not less favorable to the bank than those offered to others, or when such purchase is authorized by a majority of the board of directors not interested in the sale of such securities or property, such authority to be evidenced by the affirmative vote or written assent of such directors: *Provided, however,* That when any director, or firm of which any director is a member, acting for or on behalf of others, sells securities or other property to a member bank, the Board of Governors of the Federal Reserve System by regulation may, in any or all cases, require a full disclosure to be made, on forms to be prescribed by it, of all commissions or other considerations received, and whenever such director or firm, acting in his or its own behalf, sells securities or other property to the bank the Board of Governors of the Federal Reserve System, by regulation, may require a full disclosure of all profit realized from such sale.

Any member bank may sell securities or other property to any of its directors, or to a firm of which any of its directors is a member, in the regular course of business on terms not more favorable to such director or firm than those offered to others, or when such sale is authorized by a majority of the board of directors of a member bank to be evidenced by their affirmative vote or written assent: *Provided, however,* That nothing in this section contained shall be construed as authorizing member banks to purchase or sell securities or other property which such banks are not otherwise authorized by law to purchase or sell.

Thus, this section deals solely with purchases and sales between a bank and its director. No allegation of any purchase or sale between a member bank and its directors has been made and in no way can the complaint be construed to state a violation of section 375.

6. It is interesting to note that MLS's brief in the previous suit conceded that § 71a had no application to its claim. *See Municipal Leasing Systems v. Northampton National Bank, supra* at 971.

Section 375a is a lengthy section, and we see no reason to quote it in full. The Court's close scrutiny of the section reveals that it deals solely with loans to executive officers of member banks. An examination of the complaint reveals no allegations of loans to executive officers and cannot be construed to bring defendants' alleged conduct within the section.

Section 376 states:

No member bank shall pay to any director, officer, attorney, or employee a greater rate of interest on the deposits of such director, officer, attorney, or employee than that paid to other depositors on similar deposits with such member bank.

Section 376 concerns itself solely with the rate of interest on deposits to be paid by member banks to directors, officers, attorneys or employees. There is nothing in the complaint challenging the rate of interest paid to any of these individuals.

Although section 503 may create a cause of action "in any other person" if the directors have knowingly violated 12 U.S.C. §§ 375, 375a or 376, plaintiffs have made no factual allegations that are in any way connected with these sections. Furthermore, plaintiffs have alleged no violations of Title 18. It appears that plaintiffs have just grasped federal statutes without any relation to the factual allegations pleaded in the complaint. The complaint is factually defective in that it fails to set forth a federal cause of action and, therefore, defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), will be granted.

Having determined that plaintiffs' federal claims must be dismissed, we shall consider whether we are to hear the pendent state claims. Federal courts have the power to adjudicate claims based on state law if there is a federal claim of sufficient substance to confer subject matter jurisdiction on the court. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976). However, as stated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), if the federal claims are dismissed before trial, the state claims should also be dismissed. We, therefore, shall decline to exercise jurisdiction over plaintiffs' state law claims.